Stephen F. English, Bar No. 730843
SEnglish@perkinscoie.com
Renée E. Rothauge, Bar No. 903712
RRothauge@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: +1.503.727.2000

Michael Huston, *admitted pro hac vice*
MHuston@perkinscoie.com
PERKINS COIE LLP
2525 E Camelback Rd, Suite 500
Phoenix, AZ 85016
Telephone: +1.602.351.8000

Shae McPhee, *admitted pro hac vice*
SMcPhee@perkinscoie.com
PERKINS COIE LLP
1301 Second Avenue, Suite 4200
Seattle, WA 98101-3804
Telephone: +1.206.359.3136

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JULIE DOE, an individual proceeding under a pseudonym,<br><br>        Plaintiff,<br><br>     v.<br><br>CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole; CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole; and THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole,<br><br>        Defendants. | Case No. 6:25-cv-00222-MC<br><br>**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Oral Argument Requested |

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

**Page**

LR 7-1 CERTIFICATE................................................................................................... 1

MOTION....................................................................................................................... 1

INTRODUCTION ......................................................................................................... 1

FACTS .......................................................................................................................... 3

ARGUMENT ................................................................................................................ 3

    I.    Legal standard for judgment on the pleadings. .................................................. 3

    II.    The Church is entitled to judgment on the pleadings. ........................................ 4

        A.    The Church did not owe Plaintiff a common law duty. .................................. 4

        B.    The Church did not have a statutory duty. .................................................... 15

    III.    No alleged facts plausibly support Plaintiff's punitive damages claim. ........................ 17

        A.    Allowing Plaintiff to pursue punitive damages would violate Washington's public policy................................................................................................................ 18

        B.    Plaintiff's allegations cannot support punitive damages under Oregon law................. 18

        C.    Alleged misconduct in other cases cannot create a claim for punitive damages here. . 21

        D.    Oregon lacks power to punish conduct lawfully occurring in other states. .................. 21

CONCLUSION............................................................................................................. 22

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Achcar-Winkels v. Lake Oswego Sch. Dist.*,
2017 WL 2291338 (D. Or. May 25, 2017) ..............................................................14

*Ahlburg v. Frank-Lin Distillers Prods., Ltd.*,
166 F.3d 342 (9th Cir. 1999) ...................................................................................3

*Andor v. United Air Lines, Inc.*,
739 P.2d 18 (Or. 1987) ...........................................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................4, 8, 17

*Badger v. Paulson Inv. Co., Inc.*,
803 P.2d 1178 (Or. 1991) .......................................................................................19

*Berry v. Watchtower Bible & Tract Society of N.Y., Inc.*,
879 A.2d 1124 (N.H. 2005) ...............................................................................10, 21

*Bigelow v. Virginia*,
421 U.S. 809 (1975)................................................................................................22

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559 (1996)...........................................................................................16, 22

*Bryan R. v. Watchtower Bible & Tract Society of New York, Inc.*,
738 A.2d 839 (Me. 1999)....................................................................................11, 12

*Buchler v. Oregon Corrections Div.*,
853 P.2d 798 (Or. 1993) ..........................................................................................8

*C.J.C. v. Corp. of Cath. Bishop of Yakima*,
985 P.2d 262 (Wash. 1999)......................................................................................12

*Cafasso v. General Dynamics C4 Sys.*,
637 F.3d 1047 (9th Cir. 2011) ..................................................................................4

*Christensen v. Royal Sch. Dist. No. 160*,
124 P.3d 283 (Wash. 2005).......................................................................................9

*Conti v. Watchtower Bible & Tract Soc'y*,
235 Cal. App. 4th 1214 (2015) ...........................................................................10, 11

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Conway v. Pacific Univ.*,
924 P.2d 818 (1996)..................................................................................................8

*Cramer v. Mengerhausen*,
550 P.2d 740 (Or. 1976) .......................................................................................7, 15

*Dailey v. N. Coast Life Ins. Co.*,
919 P.2d 589 (Wash. 1996).....................................................................................18

*Del Webb Communities, Inc. v. Partington*,
652 F.3d 1145 (9th Cir. 2011) ................................................................................15

*Doe ex rel. Farley, Piazza & Assocs. v. Gladstone Sch. Dist.*,
2012 WL 2049173 (D. Or. June 6, 2012) ...........................................................13, 14

*Doe v. Corporation of Catholic Bishop of Yakima*,
957 F. Supp. 2d 1225 (E.D. Wash. 2013).................................................................12

*E. J. T. v. Jefferson Cnty.*,
518 P.3d 568 (Or. 2022) ..........................................................................................16

*Erickson v. Pharmacia LLC*,
578 P.3d 306 (2025)..................................................................................................18

*F.T. v. West Linn-Wilsonville Sch. Dist.*,
509 P.3d 655 (Or. Ct. App. 2022)..............................................................................8

*Fazzolari v. Portland Sch. Dist. No. 1J*,
734 P.2d 1326 (Or. 1987) ...........................................................................................6

*Folsom v. Burger King*,
958 P.2d 301 (Wash. 1998)....................................................................................1, 5

*Fraker v. Benton County Sherriff's Office*,
166 P.3d 1137 (Or. Ct. App. 2007)...........................................................................14

*Fuhrer v. Gearhart-By-The-Sea, Inc.*,
760 P.2d 874 (Or. 1988) ......................................................................................14, 15

*H.B.H. v. State*,
429 P.3d 484 (Wash. 2018).........................................................................................9

*Huntington v. Attrill*,
146 U.S. 657 (1892)..................................................................................................22

iii-     TABLE OF AUTHORITIES

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Insight Glob., LLC v. Tessar*,
2019 WL 2488717 (D. Or. Mar. 20, 2019) ...................................................................18

*Iseberg v. Gross*,
879 N.E.2d 278 (Ill. 2007) .............................................................................................1

*Jane Doe 130 v. Archdiocese of Portland in Oregon*,
717 F. Supp. 2d 1120 (D. Or. 2010) .......................................................................18, 19

*Jane Doe v. Corporation of the President of the Church of Jesus Christ of Latter-
day Saints*,
167 P.3d 1193 (Wash. Ct. App. 2007) ...............................................................1, 2, 10

*Jane Doe v. Corporation of the President of the Church of Jesus Christ of Latter-
day Saints*,
98 P.3d 429 (Utah Ct. App. 2004) ...............................................................................11

*John HG Doe v. Roman Cath. Archbishop of Los Angeles*,
70 Cal. App. 5th 657 (Cal. Ct. App. 2021) .................................................................10

*Linkhart v. Savely*,
227 P.2d 187 (Or. 1951) ...............................................................................................19

*M.W. v. Dep't of Soc. & Health Servs.*,
70 P.3d 954 (Wash. 2003) .............................................................................................15

*Meyer v. Lindala*,
675 N.W.2d 635 (Minn. Ct. App. 2004) .......................................................................12

*Neighorn v. Quest Health Care*,
870 F. Supp. 2d 1069 (D. Or. 2012) .............................................................................19

*Nelson v. City of Irvine*,
143 F.3d 1196 (9th Cir. 1998) .........................................................................................4

*Niece v. Elmview Group Home*,
929 P.2d 420 (Wash. 1997) .......................................................................................5, 9

*People v. Lewis*,
234 Cal. App. 4th 203 (Cal. Ct. App. 2015) ...............................................................16

*R.K. v. U.S. Bowling Cong.*,
531 P.3d 901 (Wash. Ct. App. 2023) .............................................................................9

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Robb v. City of Seattle*,
295 P.3d 212 (Wash. 2013)...................................................................................5, 7

*Sheikh v. Choe*,
128 P.3d 574 (Wash. 2006)........................................................................................5

*Shin v. Sunriver Preparatory School, Inc.*,
111 P.3d 762 (Or. App. 2005)...........................................................................13, 14

*State ex rel. Juvenile Dep't of Washington Cnty. v. Casteel*,
523 P.2d 1039 (Or. Ct. App. 1974)..........................................................................16

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003).............................................................................................21, 22

*State v. Motherwell*,
788 P.2d 1066 (Wash. 1990)....................................................................................16

*Stewart v. Kids Inc. of Dallas, OR*,
261 P.3d 1272 (Or. 2011) ..........................................................................................8

*Stone v. Witt*,
581 P.3d 919 (2025)...........................................................................1, 6, 7, 8, 15

*T.L. ex rel. Lowry v. Sherwood Charter Sch.*,
68 F. Supp. 3d 1295 (D. Or. 2014) ..........................................................................14

*Taylor v. Gorilla Capital, Inc.*,
2018 WL 5268609 (D. Or. Oct. 23, 2018)...............................................................14

*Ticknor v. Choice Hotels Int'l, Inc.*,
265 F.3d 931 (9th Cir. 2001) ...................................................................................15

*Tomlinson v. Metropolitan Pediatrics, LLC*,
412 P.3d 133 (Or. 2018) .......................................................................................6, 7

*Trees v. SEIU Local 53*,
763 F. Supp. 3d 1250 (D. Or. 2025) ...............................................................3, 4, 12

*United Auto. Ins. Co. v. Christensen*,
2022 WL 1692798 (D. Nev. May 25, 2022)...............................................................3

*Verdugo v. Target Corp.*,
770 F.3d 1203 (9th Cir. 2014) ...................................................................................4

v-    TABLE OF AUTHORITIES

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*Volk v. DeMeerleer*,
386 P.3d 254 (Wash. 2016).....................................................................................................9

*Washburn v. City of Federal Way*,
310 P.3d 1275 (Wash. 2013)...................................................................................................5

*Whittlestone, Inc. v. Handi-Craft Co.*,
618 F.3d 970 (9th Cir. 2010) ................................................................................................17

*Williams v. Invenergy, LLC*,
2014 WL 7186854 (D. Or. Dec. 16, 2014) ...........................................................................2

*Zimmerman v. The Church of Jesus Christ of Latter-day Saints*,
2025 WL 3539221 (D. Nev. Dec. 10, 2025)..........................................................................2

**STATUTES**

Oregon Revised Statutes § 12.117 .............................................................................................16

Oregon Revised Statutes § 31.725 .............................................................................................18

Oregon Revised Statutes § 31.730 .............................................................................18, 19, 20, 21

Oregon Revised Statutes § 419B.010 ........................................................................................16

Revised Code of Washington § 26.44.030 (2016)......................................................................16

Revised Code of Washington § 26.44.050..................................................................................16

**OTHER AUTHORITIES**

David Finkelhor, et al., *The Lifetime Prevalence of Child Sexual Abuse and
Sexual Assualt Assessed in Late Adolescence*, Journal of Adolescent Health,
55:3 (Sept. 1, 2014), https://www.jahonline.org/article/S1054-
139X(13)00854-9/fulltext (last visited February 13, 2026).................................................20

District of Oregon Rule 7-1 .........................................................................................................1

Federal Rule of Civil Procedure 12 ........................................................................1, 3, 4, 17, 18

Restatement (Second) of Torts §§ 315-319 .................................................................................9

Victor E. Schwartz et al., *Defining the Duty of Religious Institutions to Protect
Others: Surgical Instruments, Not Machetes, Are Required*, 74 U. Cin. L. Rev.
11, 30 (2005)..........................................................................................................................9

vi-    TABLE OF AUTHORITIES

**LR 7-1 CERTIFICATE**

Pursuant to the Court's scheduling order of February 10, 2026, The Church of Jesus Christ of Latter-day Saints ("the Church") respectfully submits this motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 52, 55.[1]

**MOTION**

The Church moves under Rule 12(c) for judgment dismissing Plaintiff Julie Doe's complaint. Plaintiff's sole claim for negligence fails because the Church had no legal duty—under either Washington or Oregon law—to protect Plaintiff from her father's crimes. *See Stone v. Witt*, 581 P.3d 919, 930 (2025); *Jane Doe v. Corporation of the President of the Church of Jesus Christ of Latter-day Saints*, 167 P.3d 1193 (Wash. Ct. App. 2007). The Church did not create any risk of harm to Plaintiff. And the Church did not even arguably have a "special relationship" with either Plaintiff or her father that could give rise to a duty. Because duty is an essential element of Plaintiff's negligence claim, and because no duty exists, the Court should grant judgment on the pleadings.

**INTRODUCTION**

Plaintiff Julie Doe seeks to hold the Church liable for not protecting her from her father's abuse. One of the most deeply-rooted common law rules is that a person generally has no duty to rescue another from danger the person did not create. This rule "has been retained in every jurisdiction," including Oregon and Washington. *Iseberg v. Gross*, 879 N.E.2d 278, 291 (Ill. 2007); *see Folsom v. Burger King*, 958 P.2d 301, 310 (Wash. 1998) (reaffirming the "traditional 'no duty to rescue' rule"); *Stone*, 581 P.3d at 930 (refusing to "begin permitting liability in failure-to-rescue type negligence claims without a special circumstance or relationship").

---

[1] Plaintiff named three Church entities as defendants, but they are the same entity. In 2019, Corporation of the Presiding Bishop of The Church of Jesus Christ of Latter-day Saints formally changed its name to The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole. In 2020, Corporation of the President of The Church of Jesus Christ of Latter-day Saints merged with this renamed entity. Thus, the sole remaining entity is The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole. It is the proper defendant in this lawsuit.

1-   **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

Notwithstanding this controlling precedent, Plaintiff asks this Court to be the first to hold that a mere bystander—in this case a volunteer clergyman—had a duty to rescue based solely on the foreseeability of the harm. But "when this court sits in diversity it must follow state law as it exists." *Williams v. Invenergy, LLC*, 2014 WL 7186854, at *13 (D. Or. Dec. 16, 2014).

The State of Washington placed Plaintiff into foster care with Craig and Jennifer Ford and later allowed the Fords to adopt Plaintiff. About two-and-a-half years later, when Plaintiff was 15, Craig Ford commenced a sexual relationship with her. Many years after that, Plaintiff sued The Church of Jesus Christ of Latter-day Saints and sought damages for injuries resulting from her father's abuse. She does not allege that the Church affirmatively caused her harm. She blames the Church "for failing to reasonably respond" to a foreseeable harm. ECF No. 41 at 11; *see also id*. at 12 ("The 'injurious conduct' at issue … is the [Church's] ongoing negligent failure to respond to notice of sexual abuse of Plaintiff by Craig Ford."). Specifically, she alleges that her mother told Wade Pickett, a volunteer clergyman in Washington, that she suspected her husband and daughter were "having a sexual relationship" and "Pickett did not take action" to protect her. Compl. ¶¶ 20-23. She also alleges that unnamed Church agents in Oregon felt that something was off in the relationship between Plaintiff and her father and failed to intervene. *Id*. ¶ 24. Based on these allegations, Plaintiff pleads a single negligence claim against the Church.

To hold that Plaintiff has pleaded a viable legal claim against the Church, this Court would have to be the first to ever recognize a legal duty of care in circumstances like these. No church has been held liable for failing to stop intrafamily abuse. Recently, another court in this Circuit rejected a negligence claim based on failure to prevent abuse by an adoptive father, noting that the plaintiff "does not provide any authority to support [her] argument" that a church or its clergy owed her a duty. *Zimmerman v. The Church of Jesus Christ of Latter-day Saints*, 2025 WL 3539221, at *3 (D. Nev. Dec. 10, 2025); *see also Jane Doe*, 167 P.3d at 1212-13 (holding Church had no duty to prevent stepfather's abuse.). Plaintiff has no legal authority imposing a duty in a case with facts like these.

2-    **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff is inviting the Court to "venture … into a sea heretofore uncharted." *Ahlburg v. Frank-Lin Distillers Prods., Ltd.*, 166 F.3d 342 (9th Cir. 1999) (unpublished). But it is "not the role of federal courts to recognize causes of actions under state law before the state's own courts do." *United Auto. Ins. Co. v. Christensen*, 2022 WL 1692798, at *2 (D. Nev. May 25, 2022).

## FACTS

In 2013, the State of Washington placed 12-year-old Plaintiff in foster care with Jennifer and Craig Ford, after thoroughly vetting them. Compl. ¶ 15. In 2014, the Fords adopted Plaintiff. *Id*. When Plaintiff was 15, Craig Ford began having sex with her. *Id*. ¶ 17. In March 2016, Jennifer Ford found salacious letters from Craig to Plaintiff. *Id*. ¶¶ 18-20. The resulting confrontation was so intense that the police were called, but Jennifer did not tell them about the letters. *Id*. ¶ 18.

Plaintiff alleges that her mother showed one of these letters to Wade Pickett, a volunteer clergyman over Church congregations in Washington. *Id*. ¶ 20. According to Plaintiff, her mother told Pickett that "she suspected Craig Ford was having a sexual relationship with" Plaintiff. *Id*. ¶ 20. Plaintiff alleges that Pickett "did not take action to report the abuse to civil authorities, investigate, intervene, or otherwise prevent or protect against any further child sexual abuse" and also "did not advise Jennifer Ford to report the abuse." *Id*. ¶ 22. Soon thereafter, Craig Ford and Plaintiff moved to Oregon, where he continued having sex with her. *Id*. ¶ 23. Plaintiff alleges that unnamed Church agents in Oregon learned "that Craig Ford was cohabiting alone in an apartment" with his daughter and saw red flags regarding their relationship, but took no action. *Id*. ¶ 24.

## ARGUMENT

### I.    Legal standard for judgment on the pleadings.

"Rule 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial." *Trees v. SEIU Local 53*, 763 F. Supp. 3d 1250, 1257 (D. Or. 2025). The analysis under Rule 12(c) "'is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'" *Id*. (quoting *Pit River Tribe v.*

3-    **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

*Bureau of Land Mgmt.*, 793 F.3d 1147, 1155 (9th Cir. 2015)). "Although [*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)] establishes the standard for deciding a Rule 12(b)(6) motion," because Rule 12(c) is "functionally identical," the same standard applies. *Cafasso v. General Dynamics C4 Sys.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). The court therefore asks "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." *Id.* (citing *Iqbal*, 556 U.S. at 678).

"A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998). That is the case when "'there is a lack of a cognizable theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Trees*, 763 F. Supp. 3d at 1257 (quoting *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011)).

## II.   The Church is entitled to judgment on the pleadings.

The Church believes Washington law applies. But on the dispositive issue in this motion— the existence of a duty—Oregon and Washington law are similar enough that whatever daylight exists between them is immaterial. As shown below, both require dismissal of Plaintiff's negligence claim because the Church owed her no duty. Accordingly, the Church is entitled to judgment on the pleadings because, even if the pleaded facts are true, the Complaint "lack[s] … a cognizable theory." *Trees*, 763 F. Supp. 3d at 1257 (quotation marks omitted).

### A.   The Church did not owe Plaintiff a common law duty.

It is a "well-established principle" that "as a general rule, an individual or entity does not have a duty under the common law to come to the aid of another person whom the individual or entity has not injured (the general no-duty-to-rescue rule)." *Verdugo v. Target Corp.*, 770 F.3d 1203, 1222 (9th Cir. 2014). Washington and Oregon both adhere to the no-duty-to-rescue rule, which is based on the traditional common law distinction between *misfeasance* and *nonfeasance*— i.e., between actively causing harm and passively failing to prevent harm caused by a third person. Because the Church did not create the risk that Plaintiff's father would abuse her, the Church had

4-   **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

no legal duty to rescue Plaintiff from that risk.

**1. Under Washington law, there is no duty to rescue a victim of third-party criminal conduct absent a special relationship.**

Under Washington law, because "a negligence action will not lie if a defendant owed a plaintiff no duty of care, the primary question is whether a duty of care existed." *Folsom*, 958 P.2d at 308. This is "a question of law." *Sheikh v. Choe*, 128 P.3d 574, 577 (Wash. 2006). The heart of Plaintiff's claim is that her mother's report to Pickett made it foreseeable that the abuse would continue unless the Church intervened. But "[f]oreseeability alone is an insufficient basis for imposing a duty." *Robb v. City of Seattle*, 295 P.3d 212, 217 (Wash. 2013). "[A]bsent some kind of special relationship between the plaintiff and the defendant … only misfeasance, not nonfeasance, could create a duty to act reasonably to prevent foreseeable criminal conduct." *Washburn v. City of Federal Way*, 310 P.3d 1275, 1289 (Wash. 2013).

This no-duty-to-rescue rule arose early in the "common law distinction between action and inaction, or 'misfeasance' and 'non-feasance.'" *Robb*, 295 P.3d at 217 (cleaned up). The common law did not impose a duty on "one who merely did nothing, even though another might suffer serious harm because of his omission to act" unless "there was some special relation between the parties, on the basis of which the defendant was found to have a duty to take action for the aid or protection of the plaintiff." *Id*. (cleaned up).

This remains the law in Washington. Thus, the Washington Supreme Court has repeatedly held that "there is no duty to prevent a third party from intentionally harming another unless a special relationship exists between the defendant and either the third party or the foreseeable victim of the third party's conduct." *Niece v. Elmview Group Home*, 929 P.2d 420, 423 (Wash. 1997) (cleaned up). "Under traditional tort law, absent affirmative conduct or a special relationship, no legal duty to come to the aid of a stranger exists." *Folsom*, 958 P.2d at 310.

**2. Oregon law also holds that a person has no duty to rescue a crime victim absent a special relationship.**

Oregon law is the same. The Oregon Supreme Court has long held that, absent a special relationship, "the issue of liability for harm actually resulting from defendant's conduct properly

5- **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

depends on whether that conduct unreasonably *created a foreseeable risk* to a protected interest of the kind of harm that befell the plaintiff." *Fazzolari v. Portland Sch. Dist. No. 1J*, 734 P.2d 1326, 1336 (Or. 1987) (emphasis added). The concept of "risk creation" tracks the "historical distinction between misfeasance and nonfeasance, which has been important to defining the boundaries of a defendant's liability." *Stone*, 581 P.3d at 930 n.6. In the absence of "the existence of a special relationship between a defendant and the injured party," mere failure to act to prevent foreseeable harm does not create liability. *Id*. at 922. "[L]iability ordinarily does not extend to harm that the defendant merely failed to intervene to prevent, *i.e.*, harm resulting from a risk that the defendant did not create." *Id*. at 927; *see also Fazzolari*, 734 P.2d at 1330 (describing harm from "a bystander's failure to rescue" as one of the "traditionally … excluded … categories of quite predictable injuries and claimants").

The Oregon Supreme Court recently reaffirmed the importance of "the concept of risk creation" in determining a defendant's liability in a negligence case. *Stone*, 581 P.3d at 930. The majority opinion in *Stone* expressly rejected a concurring opinion's argument that "a plaintiff need only allege a risk of harm that is *reasonably foreseeable* to the defendant, not that the defendant engaged in conduct that *created* the risk." *Id.* at 940 (Bushong, J., concurring). The majority explained that "'foreseeability of the plaintiffs' injury cannot, by itself, establish' that the defendants were liable in negligence" where the "'injuries resulted from defendants' failure to take affirmative steps to protect them from a risk of harm that defendants did not create.'" *Id.* at 927 (quoting *Tomlinson v. Metropolitan Pediatrics, LLC*, 412 P.3d 133, 141 (Or. 2018)). In "most negligence cases"—including this one—"there will be no dispute about whether a defendant's conduct created the risk of harm." *Id.* at 930. But even when there is a dispute, resolving duty "is a question of law." *Tomlinson*, 412 P.3d at 140.

Based on the concept of risk creation, *Stone* divided negligence claims into two categories: "ordinary negligence" (*Stone,* 581 P.3d at 925) and "special liability in negligence" (*id*. at 928). It is the "concept of risk creation" that "distinguishes an ordinary negligence claim from failure-to-

6- **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

rescue type claims." *Id*. at 930. Ordinary negligence claims are those where the defendant's conduct created the risk. Liability for ordinary negligence is "premised on the ordinary obligation—or 'duty'—that, in general, every person owes to every other person." *Id*. at 926. By contrast, where a defendant has not created the risk, the case falls into the special liability category. Establishing special liability "depends on the existence of special circumstances or relationships." *Id*.; *Cramer v. Mengerhausen*, 550 P.2d 740, 743 (Or. 1976).

In short, Oregon law is the same as Washington law: "There is no duty to aid one in peril in the absence of some special relation between the parties which affords a justification for the creation of a duty." *Id*.; *Tomlinson*, 412 P.3d at 141.

### 3. Plaintiff alleges mere nonfeasance—failure to rescue her from her father's criminal conduct.

The Washington Supreme Court has explained that "misfeasance" occurs "where an actor exposes another to danger by creating a situation of peril" or in other words "active misconduct resulting in positive injury to others." *Robb*, 295 P.3d at 217. "Misfeasance necessarily entails the creation of a new risk of harm to the plaintiff." *Id*. at 218. "Nonfeasance consists of passive inaction or failure to take steps to protect others from harm." *Id*. (quotation marks omitted). With nonfeasance, a preexisting risk is "made no worse." *Id*. (citation omitted). Likewise, the Oregon Supreme Court explains that the "distinction between misfeasance and nonfeasance" lies in the "idea of risk creation … rather than fail[ure] to protect against a risk of harm." *Stone*, 581 P.3d at 930 n.6

This is unmistakably a nonfeasance case. Plaintiff alleges that the Church "did not take action to report the abuse to civil authorities, investigate, intervene, or otherwise prevent or protect against any further child sexual abuse of [Plaintiff] by Craig Ford" and "did not advise Jennifer Ford to report the abuse." Compl. ¶ 22. This alleged failure to act clearly did not create a "new risk of harm." *Robb*, 295 P.3d at 218. If everything Plaintiff says is true, the Church "merely failed to intervene to prevent" harm resulting from a preexisting risk. *Stone*, 581 P.3d at 927. Because of that, under both Washington and Oregon law, the Church had no duty to rescue Plaintiff "in the

7- **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

absence of some special relation between the parties which affords a justification for the creation of a duty." *Id*. (cleaned up).

### 4. No special relationship existed between Plaintiff and the Church.

Plaintiff has alleged that she "did in fact enter into a special relationship with [the Church] as a church member and/or participant in church services and programming" and that "[a]s a result of this special relationship, [the Church] owed Plaintiff, a minor child, a special duty of care …." Compl. ¶ 33. But that bare *legal* assertion is not simply taken as true. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see also id*. at 678-69 (explaining that a pleading must contain more than "labels and conclusions" or "naked assertions devoid of further factual enhancement"). Plaintiff does not, nor could she, plead *facts* to plausibly support the existence of a special relationship. No court in Oregon or Washington—or anywhere else—has found a special relationship in circumstances remotely like these.

A special relationship exists under Oregon law when "the party who owes the duty has a special responsibility toward the other party." *Conway v. Pacific Univ.*, 924 P.2d 818, 824 (1996). The relationship arises only when the "party who is owed the duty effectively has authorized the party who owes the duty to exercise independent judgment in the former party's behalf and in the former party's interests." *Id.* "In doing so, the party who is owed the duty is placed in a position of reliance upon the party who owes the duty." *Id.* A special relationship is thus akin to a guardianship situation—whether permanent or temporary. *See, e.g.*, *F.T. v. West Linn-Wilsonville Sch. Dist.*, 509 P.3d 655, 661 (Or. Ct. App. 2022) (recognizing that "schools and their students are in a recognized special relationship … while [students] are entrusted to the school's care") (quotation marks omitted); *Stewart v. Kids Inc. of Dallas, OR*, 261 P.3d 1272, 1279 (Or. 2011) (recognizing that youth organization "entrusted with children for supervision and care" had a special relationship with those children); *Buchler v. Oregon Corrections Div.*, 853 P.2d 798 (Or. 1993) (recognizing special relationship between jailer and prisoner).

8- **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Similarly, under Washington law, special relationships "are based on the liable party's assumption of responsibility for the safety of another." *H.B.H. v. State*, 429 P.3d 484, 494 (Wash. 2018) (citation omitted). Thus, for example, a state has a special relationship with its foster children. *Id*. A group home has a special relationship with its disabled residents. *Niece*, 929 P.2d at 425. A school "has a 'special relationship' with the students in its custody." *Christensen v. Royal Sch. Dist. No. 160*, 124 P.3d 283, 287 (Wash. 2005). Youth organizations have a special relationship with children while entrusted to their care. *R.K. v. U.S. Bowling Cong.*, 531 P.3d 901, 906-07 (Wash. Ct. App. 2023).[2]

No court has held that a church has a special relationship with its parishioners, either minors or adults. Churches do not have the kind of protective responsibility for parishioners that creates a special relationship. As Victor Schwartz, co-author of Prosser on Torts, has explained:

> [R]eligious institutions have very limited, if any, practical control over a member. This creates a very real and practical difference from situations where courts have found "special relationships." In all of the "special relationships" where an actor owes a duty of care to a third person for risks posed by another, the relationships are characterized by the significant degree of practical control that the actor has over the perpetrator or the victim. By contrast, while churches … may have religious influence over their members' religious practices and beliefs, they have little if any "control" over their day-to-day activities.

Victor E. Schwartz et al., *Defining the Duty of Religious Institutions to Protect Others: Surgical Instruments, Not Machetes, Are Required*, 74 U. Cin. L. Rev. 11, 30 (2005). A church "does not have the qualitative or quantitative control over its members that" exists in the recognized special relationships. *Id*.

---

[2] The traditional "special relationships" are identified in sections 315-319 of the Restatement (Second) of Torts. "The feature common to the enumerated specific sections is the ability to exercise control in the special relationship: § 316 describes a parent's control over a child, § 317 describes a master's control over a servant, § 318 describes a landowner's control over the use of his/her land, and § 319 describes a person's duty to exert control when taking charge of another." *Volk v. DeMeerleer*, 386 P.3d 254, 283 (Wash. 2016) (Wiggins, J., dissenting).

9-    **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

That is why there is "no authority" imposing a "duty on … a church to prevent its members from harming each other." *Conti v. Watchtower Bible & Tract Soc'y*, 235 Cal. App. 4th 1214, 1227 (2015). There is "no special relationship between the church and all of the children in the [church] simply because they were members of the church." *Id*. at 1231. Churches "do[] not have a special relationship with … all of [their] parishioners." *John HG Doe v. Roman Cath. Archbishop of Los Angeles*, 70 Cal. App. 5th 657, 672 (Cal. Ct. App. 2021).

The absence of a special relationship between a church and its parishioners has led to uniform rejection of claims against churches based on intrafamily abuse or abuse of one church member by another, even when the abuse was foreseeable. In *Jane Doe v. Corporation of the President of the Church of Jesus Christ of Latter-day Saints*, 167 P.3d 1193 (Wash. Ct. App. 2007), two sisters who were sexually abused by their stepfather, a Church member, sued the Church for negligence. One of the daughters reported to the local bishop that her stepfather was abusing her, but the bishop took no action. The trial court granted the Church's motion to dismiss, and the court of appeals affirmed because the Church "did not owe a common law duty of protection to the plaintiffs." *Id*. at 1213.

In *Berry v. Watchtower Bible & Tract Society of N.Y., Inc.*, 879 A.2d 1124 (N.H. 2005), a mother told Congregation elders that her husband was molesting their children. The elders "failed to report it to law enforcement authorities and improperly counseled [her] about how she should handle the alleged abuse." *Id*. at 1125. The plaintiffs sued the church for not protecting them from their father, but the court held that the church owed no duty because "the plaintiffs were at all times under the custody and protection of their parents." *Id*. at 1129. If a duty were imposed in such circumstances, the "rule which imposes no duty on citizens to prevent the criminal acts of third parties will be swallowed up and civil liability unreasonably extended." *Id*. at 1130. When a child is abused by a parent, the church does "not create the risk of harm to the children nor control its cessation or continuation." *Id*.

10- **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

In *Conti*, 235 Cal. App. 4th 1214, the Congregation knew that a parishioner, Jonathan Kendrick, had sexually molested a child. Conti, a young girl, met Kendrick at Congregation services. "Kendrick insinuated himself into her family, befriended her father Neal at meetings, and then began coming to their house." *Id*. at 1222. The Congregation elders did not warn Conti or her parents about Kendrick's past, and Kendrick began molesting her. *Id*. The court held that the Congregation had no duty to protect Conti or warn her parents, reiterating that the "no duty to aid rule remains a fundamental and long-standing rule of tort law." *Id*. at 1226 (cleaned up).

In *Jane Doe v. Corporation of the President of the Church of Jesus Christ of Latter-day Saints*, 98 P.3d 429 (Utah Ct. App. 2004), the plaintiffs, Jane and John Doe, were sexually abused by George Tilson, who attended their congregation. The plaintiffs alleged that the Church had "received several complaints from its members that Tilson was sexually abusing children" in the congregation. *Id*. at 430. Tilson abused Jane and John Doe after enticing them into his home. *Id*. The trial court granted the Church's motion to dismiss, and the Utah Court of Appeals affirmed. The court "reject[ed] Plaintiffs' argument that [church] membership alone was sufficient to establish a special relationship." *Id*. at 432.

In *Bryan R. v. Watchtower Bible & Tract Society of New York, Inc.*, 738 A.2d 839 (Me. 1999), a parishioner, Bryan, alleged that an adult church member, Baker, had molested him. Congregation elders knew that Baker had previously molested another boy. "The crux of Bryan's claim," the court explained, "is that the church, because of an alleged special relationship with its members, has a duty to protect its members from each other, at least when the church and its agents are aware of a potential danger posed by a member." *Id*. at 843. But the court invoked the no-duty-to-rescue rule and rejected the assertion of a special relationship "between a church and its members." *Id*. at 845. The plaintiff did "not provide[] any support for his assertion that a religious organization" had a duty "to protect … members from other members of the church who may present a danger." *Id*. at 846. And notably, "[t]he creation of an amorphous common law duty on the part of a church or other voluntary organization requiring it to protect its members from each

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

other would give rise to both unlimited liability and liability out of all proportion to culpability." *Id*. at 847 (cleaned up).

In *Meyer v. Lindala*, 675 N.W.2d 635 (Minn. Ct. App. 2004), two plaintiffs abused by a congregation member sued the congregation contending that a "special relationship" existed because Jehovah's Witnesses' doctrine "provides that members rely on congregation elders for all of their concerns" rather than turning to government authorities for help. *Id*. at 640. But the court held that "[p]roviding faith-based advice or instruction, without more, does not create a special relationship." *Id*.

So far in this litigation, Plaintiff has not pointed to any case that holds that church membership creates a special relationship. Nor can Plaintiff point to any case where a church was held to have a duty to prevent intrafamily abuse.

This is not to say that churches can never be held liable for sexual abuse. A church does have a special relationship with a child while that child is entrusted to "the custody and care of [the] church and its workers, whether it be on the premises for services and Sunday school, or off the premises at church sponsored activities or youth camps." *C.J.C. v. Corp. of Cath. Bishop of Yakima*, 985 P.2d 262, 274 (Wash. 1999). But Plaintiff was abused by her father while in his custody. No duty exists to prevent such abuse. The parental relationship was "established outside the context of the church" and nothing about the family's relationship with the church "provide[d] … access to the victim[]." *Doe v. Corporation of Catholic Bishop of Yakima*, 957 F. Supp. 2d 1225, 12333 (E.D. Wash. 2013). Such abuse has "essentially nothing to do with the church." *Id*.

In sum, Plaintiff does not plead any facts to plausibly allege that the Church or its clergy had any kind of "special relationship" with her that would give rise to a duty to protect her from her father's abuse. She has not pleaded a "cognizable legal theory." *Trees*, 763 F. Supp. 3d at 1257 (quotation marks omitted).

12-  **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

### 5.    Plaintiff's counterarguments are unavailing.

Plaintiff has argued that the Court can cobble together a common law duty under Oregon law by "harmoniz[ing]" Oregon cases addressing negligence claims arising outside the clergy-parishioner context. ECF No. 41 at 17-18 n.13. That is incorrect. None of the cases Plaintiff has cited even remotely supports imposing a duty on churches to prevent intrafamily abuse.

Plaintiff relies on *Shin v. Sunriver Preparatory School, Inc.* to show that a private organization can be held liable for abuse by a parent "provided that the defendant knows of the risk to the child." ECF No. 41 at 17 n.13 (discussing, 111 P.3d 762 (2005)). *Shin* is nothing like this case. It "addressed a peculiar set of circumstances in which the plaintiff was a foreign student attending a private boarding school and living in the home of a school employee as part of a 'homestay' program, all the while subject to a detailed" agreement giving the school near complete control over her life. *Doe ex rel. Farley, Piazza & Assocs. v. Gladstone Sch. Dist.*, 2012 WL 2049173, at *12 (D. Or. June 6, 2012). "Sunriver Prep was not at all like a typical high school; it was, in the words of its president, a 'boarding school' that 'acted in the parental role' for plaintiff and others who lived in the International House and with homestay parents." *Shin*, 111 P.3d at 771 (cleaned up). The plaintiff "was subject to all school rules and the house parents' supervision not only while on campus but 24 hours a day, 7 days a week." *Id.* (cleaned up). The school exercised a "profound level of control over plaintiff's life—understandably, given her youth and the thousands of miles that separated her from her parents." *Id.* "Sunriver Prep's agents did in fact exercise independent judgment on plaintiff's behalf." *Id.* at 772. Based on these unique facts, the court found that there was a special relationship between the plaintiff and Sunriver Preparatory School, which created a special duty to protect Plaintiff from her father. *Id.* at 771-773.

Plaintiff's allegations in this case are not remotely similar. Plaintiff does not allege that the Church exercised any independent judgment on her behalf, that she lived in the Church's custody, that she was subject to the Church's control at all times, or even that she had any relationship with the Church beyond that of an ordinary parishioner.

13-    **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

Because of its unique facts, courts have easily distinguished *Shin* when plaintiffs have relied on it to argue for the existence of a special relationship. *See Doe*, 2012 WL 2049173, at *13 (D. Or. June 6, 2012) ("The facts before this court … do not begin to approach the circumstances presented in *Shin* and do not support a conclusion that a special relationship existed."); *T.L. ex rel. Lowry v. Sherwood Charter Sch.*, 68 F. Supp. 3d 1295, 1321-22 (D. Or. 2014) (distinguishing *Shin* from the normal school-student relationship); *Achcar-Winkels v. Lake Oswego Sch. Dist.*, 2017 WL 2291338, at *3 (D. Or. May 25, 2017) (recognizing that *Shin* found a special relationship only because "the school had significant custodial control of the student" plaintiff); *Taylor v. Gorilla Capital, Inc.*, 2018 WL 5268609, at *4 (D. Or. Oct. 23, 2018) ("The nature of the relationship in the present case is not like the relationship in *Shin*.").

Plaintiff next cites *Fraker v. Benton County Sherriff's Office* for the proposition that "the failure to report potential criminal activity when the risk is known, even with no relationship between the defendant and the victims, is sufficient to state a claim in negligence." ECF No. 41 at 17 n.13 (discussing 166 P.3d 1137 (Or. Ct. App. 2007), *opinion adhered to on reconsideration*, 174 P.3d 1111 (Or. Ct. App. 2007)). *Fraker* too is completely different from this case because the defendant in *Fraker* created the risk of the harm. The defendant was the roommate of a man who held the plaintiffs—the man's wife and step-daughters—hostage for several hours before killing himself. 166 P.3d at 1146-47. The defendant had allowed the perpetrator to use her car, which had a gun in the trunk. *Id.* The perpetrator drove the car to the plaintiffs' home where he took the plaintiffs hostage and terrorized them for hours with the gun. *Id.* at 1140. The court concluded that a reasonable jury could find that the defendant had created the risk to the plaintiffs. *Id.* at 1147-48. In this case, by contrast, Plaintiff has alleged no facts showing the Church created the risk that her father would abuse her.

Finally, Plaintiff cites *Fuhrer v. Gearhart-By-The-Sea, Inc.* and other cases to support her argument that "negligence can be premised on a requirement to warn about dangers completely outside the control or ownership of the defendant, if the danger is known and severe, and warning

14- **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

would have been feasible and practicable." ECF No. 17 n.13 (discussing 760 P.2d 874 (1988)). In *Fuhrer*, a person died while trying to rescue children caught in hazardous conditions of the surf in the beach next to the defendant's hotel. 760 P.2d at 876-77. Both the decedent and the children he tried to rescue were guests of the hotel. *Id.* The court held the defendant hotel was not liable for failure to warn since there were no allegations it knew or should have known of the dangerous surf. *Fuhrer* is distinguishable from this case in multiple ways. Unlike the hotel, the Church did not create the risk or expose Plaintiff to harm on its property or in any other way. And this is not a failure-to-warn case. The Church had no special knowledge of Craig Ford or reason to warn Plaintiff of any danger; Pickett learned of the abuse *from Plaintiff's mother*. This is a failure-to-rescue case. And as discussed above, Oregon law is clear that "[t]here is no duty to aid one in peril in the absence of some special relation between the parties." *Cramer*, 550 P.2d at 743.

In all events, the Court should decline Plaintiff's invitation to piece together a new Oregon common law duty from these or any other cases. The Oregon Supreme Court recently refused to "begin permitting liability in failure-to-rescue type negligence claims without a special circumstance or relationship." *Stone*, 581 P.3d at 930.  Plaintiff asks the Court to do just that. When sitting in diversity, federal courts must "approximate state law as closely as possible" and are bound by "pronouncements of the state's highest court on applicable state law." *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001) (cleaned up). This Court lacks authority to "predict[] potential changes in that law." *Id.* And the Court should "hesitate prematurely to extend the law in the absence of an indication from the state courts or the state legislature that such an extension would be desirable." *Del Webb Communities*, *Inc. v. Partington*, 652 F.3d 1145, 1154 (9th Cir. 2011) (cleaned up). The Court should hold that the Church owed Plaintiff no duty under either Washington or Oregon common law.

### B.  The Church did not have a statutory duty.

A duty to protect can also "flow from … statutes" in certain instances. *Stone*, 581 P.3d at 928; *see also M.W. v. Dep't of Soc. & Health Servs.*, 70 P.3d 954, 957 (Wash. 2003) (noting that

15-  **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

RCW 26.44.050 "requires DSHS to investigate child abuse" and "this statutory duty implies a cause of action"). Plaintiff's complaint does not identify any statute that the Church violated, but does accuse Pickett of not "report[ing] the abuse to civil authorities," which might refer to statutory reporting duties. Compl. ¶ 22.[3]

On this issue, there is disagreement between Washington and Oregon law, but ultimately not a meaningful one. At the time in question, clergy were not mandatory reporters under Washington law. *See* RCW 26.44.030 (2016); *see also State v. Motherwell*, 788 P.2d 1066, 1069 (Wash. 1990) ("[W]e agree that the Legislature intended to exempt clergy from the reporting statute …."). Clergy were, however, mandatory reporters under Oregon law. *See* ORS 419B.010.

On the question of whether Pickett had a statutory duty to report, Washington law plainly applies. Washington made a policy choice to not require its clergy to report abuse, and although Oregon made a different choice, no state can "impose its own policy choice on neighboring states." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 571 (1996). "It is axiomatic that the laws of a state have no extraterritorial effect" on noncitizens of the state. *State ex rel. Juvenile Dep't of Washington Cnty. v. Casteel*, 523 P.2d 1039, 1041 (Or. Ct. App. 1974). Clergy in Washington who learn about abuse in Washington are subject only to Washington's reporting statute, and Pickett had no duty to report under Washington law. *See People v. Lewis*, 234 Cal. App. 4th 203, 211 (Cal. Ct. App. 2015) ("California has no authority to mandate reports by adults or agencies in other states.").

But even if Oregon law applied, the Oregon Supreme Court has unmistakably held that Oregon's reporting statute, which imposes only criminal penalties, does not create a private right of action. *E. J. T. v. Jefferson Cnty.*, 518 P.3d 568, 580 (Or. 2022) ("[P]laintiff identifies nothing in the child-abuse-reporting statutes to persuade us that the legislature intended to create a new statutory right of action that would exist independently of whatever common-law claim the court

---

[3] The Complaint identifies an Oregon law providing the statute of limitations for any "action based on conduct that constitutes child abuse." Compl. ¶¶ 31, 38 (discussing ORS 12.117). But by its own terms, this provision cannot be the source of Plaintiff's cause of action: "Nothing in this section creates a new cause of action or enlarges any existing cause of action." ORS 12.117(3).

16-  **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

might recognize."). So Plaintiff could not bring a civil claim against the Church under Oregon's reporting statute in any event.

* * * * *

In sum, neither Oregon nor Washington law imposes a duty on a church to stop intrafamily abuse. The "special relationship" exception to this no-duty-to-rescue rule does not apply because Plaintiff has not, and cannot, plead facts to show that the Church had a "special relationship" with her, an ordinary parishioner. Nor did Pickett have any statutory duty to report that plaintiff could enforce through a civil action. Because duty is a threshold requirement of a negligence claim, the Church is entitled to judgment on the pleadings.

## III.    No alleged facts plausibly support Plaintiff's punitive damages claim.

If the Court agrees that that Church did not owe Plaintiff a duty, it need go no further. If the Court somehow concludes otherwise, the Church asks in the alternative for judgment on the pleadings against Plaintiff's request for punitive damages.

Based only on generalized assertions about the Church's alleged knowledge of dissimilar abuse cases, Plaintiff seeks punitive damages. But the Complaint fails to provide any specific examples or cases of the Church failing to protect children from intrafamily abuse. That is not surprising because, as discussed, churches have no duty to protect children from their own parents. Plaintiff nonetheless asserts that the Church's alleged actions in this case "were undertaken with reckless and outrageous indifference to a highly unreasonable risk of harm and with a conscious indifference to the health, safety, and welfare of Plaintiff." Compl. ¶ 40. Under either Washington law or Oregon law, Plaintiff's sparse and inapposite allegations fail *Iqbal*'s "plausibility standard." 556 U.S. at 678. The Court should dismiss the punitive damages claim under Rule 12(c).[4]

---

[4] A motion to dismiss, and not a motion to strike under Rule 12(f), is the proper vehicle to seek dismissal of damages allegations. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974-75 (9th Cir. 2010) ("Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law.").

17-  **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

**A. Allowing Plaintiff to pursue punitive damages would violate Washington's public policy.**

Under Washington law, Plaintiff has no claim for punitive damages. Punitive damages violate Washington's public policy. *Dailey v. N. Coast Life Ins. Co.*, 919 P.2d 589, 590 (Wash. 1996) ("[T]his court has consistently disapproved punitive damages as contrary to public policy."). They are forbidden unless expressly authorized by statute. *Erickson v. Pharmacia LLC*, 578 P.3d 306, 322 (2025). No Washington statute authorizes punitive damages here. *Cf. Dailey*, 919 P.2d at 590 (refusing to find that punitive damages are available in workplace sex discrimination cases because the Washington legislature had not expressly authorized them). Because Washington law applies to Plaintiff's punitive damages claim, the Court should dismiss it under Rule 12(c).

**B. Plaintiff's allegations cannot support punitive damages under Oregon law.**

Even if Oregon law were thought to apply, the Court should dismiss the punitive damages claim. In Oregon, "[p]unitive damages are not recoverable in a civil action" except in limited circumstances. ORS 31.730. Punitive damages are available only where a plaintiff can prove "by clear and convincing evidence" that the defendant "acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others." *Id.*[5]

Plaintiff's allegations fall far short of Oregon's demanding standard for punitive damages. Plaintiff has alleged only an ordinary negligence claim against the Church. *See* Compl. ¶¶ 32-40. Under Oregon law, "simple negligence, without more, cannot support an award of punitive damages." *Jane Doe 130 v. Archdiocese of Portland in Oregon*, 717 F. Supp. 2d 1120, 1140 (D.

---

[5] In Oregon state courts, a plaintiff is not allowed to include "a request for an award of punitive damages" at "the time of filing a pleading with the court." ORS 31.725(2). Instead, the plaintiff must "move the court to allow the party to amend the pleading to assert a claim for punitive damages." *Id.* The plaintiff must support that motion with "affidavits and documentation." *Id.* A court "shall" deny the motion where the "court determines that the affidavits and supporting documentation" do not "set forth *specific facts supported by admissible evidence* adequate to avoid the granting of a motion for a directed verdict…." *Id.* at (3). To be sure, federal procedure applies in federal court. *Insight Glob., LLC v. Tessar*, 2019 WL 2488717, at *7 (D. Or. Mar. 20, 2019). But the statute illustrates that Oregon's substantive standard for punitive damages is demanding, and Plaintiff has failed to meet that standard.

18- **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

Or. 2010) (citing O.R.S. 31.730(1)); *see Badger v. Paulson Inv. Co., Inc.*, 803 P.2d 1178 (Or. 1991). It is only "where the evidentiary record supports findings of *both* negligence *and* the additional factors of aggravated misconduct requisite for award of punitive damages, a punitive damages award may lie in connection with a negligence claim." *Jane Doe 130,* 717 F. Supp. 2d at 1140. Because Plaintiff has not alleged facts plausibly showing the additional factors of aggravated misconduct, the Court should dismiss the punitive claim even under Oregon law.

### 1. Plaintiff fails to plausibly plead malice.

The first factor is "malice." ORS 31.730(1). The Oregon Supreme Court described malice as "[a] tort committed with a bad motive or so recklessly as to be in disregard of social obligations, or an act wantonly, maliciously or wickedly done, is such a malicious act as authorizes the awarding of punitive damages." *Linkhart v. Savely*, 227 P.2d 187, 197 (Or. 1951). And the Oregon Supreme Court has "clarified" that malice means "a wrongful act done *intentionally* without just cause or excuse." *Neighorn v. Quest Health Care*, 870 F. Supp. 2d 1069, 1109 (D. Or. 2012) (cleaned up) (emphasis added).

Plaintiff pleads no facts in the Complaint to support a finding that Wade Pickett or the Church had any bad motive or acted intentionally to harm Plaintiff. Craig Ford's abuse of his daughter is atrocious. Plaintiff's baseless and conclusory claim that the Church "knowingly allowed, permitted, and *encouraged*" the abuse is completely implausible and unsupported by any other allegations in the Complaint. Compl. ¶¶ 26, 37 (emphasis added). Underlying the absence of malice is the fact that, under Washington law, where Pickett was located, he had no duty to do anything to protect Plaintiff from her father.

### 2. Plaintiff fails to plausibly plead reckless and outrageous indifference to a highly unreasonable risk of harm.

To satisfy the second factor, Plaintiff must plausibly allege that the Church has "shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others." ORS 31.730(1). As discussed, in the absence of any duty to protect Plaintiff, the Church cannot be held civilly liable in this case.

19- **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

That necessarily defeats any punitive damages claim. Plaintiff makes no factual allegations showing that the Church's "conduct" subjected her to "a highly unreasonable risk of harm." ORS 31.730(1). Plaintiff alleges only that the Church *failed to act* to *protect* her from harm that was already occurring. *See* Compl. ¶ 33 (alleging that "warnings, interventions, reporting, policies, trainings, education, and procedures would have protected Plaintiff from sexual abuse she suffered"). Oregon law does not authorize punitive damages for a failure to protect from harm caused by third parties.

Even assuming the Church had a duty to protect members from intrafamily sexual abuse, no specific allegations in the Complaint could support a finding of reckless and outrageous indifference to Plaintiff's safety. Punitive damages "are a penalty for conduct that is culpable by reason of motive, intent, or extraordinary disregard of or indifference *to known or highly probable risks to others*." *Andor v. United Air Lines, Inc.*, 739 P.2d 18, 25 (Or. 1987) (emphasis added). Plaintiff makes no allegations in the Complaint plausibly showing that the Church had any reason to be aware that its conduct would subject members to an increased risk of intrafamily abuse. The Complaint asserts that the Church has been on notice of "systemic problems of sexual abuse of children *entrusted to its care*." Compl. ¶ 13 (emphasis added). As an example, Plaintiff contends that "thousands of claimants have alleged that they were sexually abused by LDS Church officials in LDS Church-run scouting troops." *Id.*[6] But Plaintiff was not abused while entrusted to the Church's care. Plaintiff's father never abused her on Church grounds or at any Church activity. Inapposite and dissimilar abuse cases cannot place the Church on notice of any highly probable risk of harm.

---

[6] Child sexual abuse is a *societal* scourge. One in four girls and one in twenty boys in the United States is sexually abused or assaulted by age 17. *See* David Finkelhor, *et al.*, *The Lifetime Prevalence of Child Sexual Abuse and Sexual Assault Assessed in Late Adolescence*, Journal of Adolescent Health, 55:3 (Sept. 1, 2014), https://www.jahonline.org/article/S1054-139X(13)00854-9/fulltext (last visited February 13, 2026). The Church and its members certainly are not immune to this plague, but any suggestion that the Church has a unique problem with child sexual abuse is baseless.

20- **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Nor could any allegations in the Complaint plausibly support a finding that Wade Pickett recklessly or outrageously disregarded a highly unreasonable risk of harm to Plaintiff in failing to report any suspected abuse to Washington authorities. ORS 31.730(1). As explained above, no statutory or other legal duty required him to report any abuse in Washington, and Oregon does not authorize punitive damages for failing to protect others from harm caused by third parties. Even assuming he had some duty to report, Pickett learned of the suspected abuse from Plaintiff's *mother*—not from Plaintiff or some other person incapable of protecting Plaintiff. Compl. ¶ 27. It was not reckless or outrageous for Pickett to believe that Plaintiff's mother could and would protect Plaintiff from sexual abuse. *See Berry*, 879 A.2d at 1129.

## C.    Alleged misconduct in other cases cannot create a claim for punitive damages here.

At any rate, the mere fact that misconduct has allegedly occurred in other cases involving the Church cannot alone create a claim for punitive damages in this case. "A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003). "Punishment on these bases creates the possibility of multiple punitive damages awards for the same conduct." *Id.* "A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business." *Id.* at 423.

Plaintiff fails to identify any abuse cases that "replicate" the claimed misconduct at issue in this case: intrafamily abuse that occurred outside the context of sanctioned Church activities. *Id.* There is no authority to punish the Church for dissimilar acts that occurred in other cases.

## D.    Oregon lacks power to punish conduct lawfully occurring in other states.

Even assuming Oregon law applies in this case, Oregon lacks the power to punish the Church merely because a Washington-based clergy member failed to report intrafamily abuse in Washington. As discussed, there was no duty to report abuse in Washington during the relevant timeframe. "A State cannot punish a defendant for conduct that may have been lawful where it occurred." *State Farm*, 538 U.S. at 421. Nor can Oregon attempt to "deter conduct that is lawful

21-    **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

in other jurisdictions." *BMW of N. Am., Inc.*, 517 U.S. at 572-73 (1996). "A basic principle of federalism is that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders, and each State alone can determine what measure of punishment, if any, to impose on a defendant who acts within its jurisdiction." *State Farm*, 538 U.S. at 422. Punishing the Church for lawful conduct in Washington would violate its due process rights. *Id.*; *see Bigelow v. Virginia*, 421 U.S. 809, 824 (1975) ("A State does not acquire power or supervision over the internal affairs of another State merely because the welfare and health of its own citizens may be affected when they travel to that State."); *Huntington v. Attrill*, 146 U.S. 657, 669 (1892) ("Laws have no force of themselves beyond the jurisdiction of the State which enacts them, and can have extra-territorial effect only by the comity of other States.").

Pickett was a Church clergy member based in Washington. Oregon simply lacks authority to punish his alleged failure to report abuse occurring in Washington to Washington authorities. That is especially true because punitive damages violate Washington's public policy.

## CONCLUSION

The Court should grant judgment on the pleadings because Plaintiff has failed to state any valid claim for relief.

/ / /

/ / /

/ / /

22-    **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Case 6:25-cv-00222-MC    Document 56    Filed 02/20/26    Page 30 of 31

DATED: February 20, 2026.

**PERKINS COIE LLP**

By: */s/ Stephen F. English*
    Stephen F. English, OSB No. 730843
    SEnglish@perkinscoie.com
    Renée E. Rothauge, OSB No. 903712
    RRothauge@perkinscoie.com
    1120 N.W. Couch Street, Tenth Floor
    Portland, Oregon 97209-4128
    Telephone: +1.503.727.2000

    Michael Huston, *admitted pro hac vice*
    MHuston@perkinscoie.com
    2525 E Camelback Rd, Suite 500
    Phoenix, AZ 85016
    Telephone: +1.602.351.8000

    Shae McPhee, *admitted pro hac vice*
    SMcPhee@perkinscoie.com
    1301 Second Avenue, Suite 4200
    Seattle, WA  98101-3804
    Telephone: +1.206.359.3136

    *Attorneys for Defendant*

23- **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 7791 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

DATED: February 20, 2026.             **PERKINS COIE LLP**


By: */s/ Stephen F. English*
    Stephen F. English, OSB No. 730843
    SEnglish@perkinscoie.com
    Renée E. Rothauge, OSB No. 903712
    RRothauge@perkinscoie.com
    1120 N.W. Couch Street, Tenth Floor
    Portland, Oregon 97209-4128
    Telephone: +1.503.727.2000

    Michael Huston, *admitted pro hac vice*
    MHuston@perkinscoie.com
    2525 E Camelback Rd, Suite 500
    Phoenix, AZ 85016
    Telephone: +1.602.351.8000

    Shae McPhee, *admitted pro hac vice*
    SMcPhee@perkinscoie.com
    1301 Second Avenue, Suite 4200
    Seattle, WA  98101-3804
    Telephone: +1.206.359.3136

24- **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**