Peter B. Janci, OSB No. 074249
peter@crewjanci.com
Kendall M. H. Spinella, OSB No. 214446
kendall@crewjanci.com
Matan Goodblatt, OSB No. 224060
matan@crewjanci.com
Crew Janci Attorneys
9755 SW Barnes Road, Suite 430
Portland, Oregon 97225
Telephone: (503) 306-0224

*Of Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **JULIE DOE**, an individual proceeding under a pseudonym,<br><br>Plaintiff,<br><br>v.<br><br>**CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS**, a Utah corporation sole; **CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS**, a Utah corporation sole; and **THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS**, a Utah corporation sole,<br><br>Defendants. | Case No. 6:25-cv-00222-MC<br><br>PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS<br><br>*Oral Argument Requested* |

PAGE i – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..................................................................................................iii

**CERTIFICATE OF COMPLIANCE** ..................................................................................... 1

**INTRODUCTION**................................................................................................................... 1

**STATEMENT OF FACTS** ...................................................................................................... 2

**ARGUMENT** .......................................................................................................................... 4

    **I.**      **LEGAL STANDARD** .......................................................................................... 4

    **II.**     **OVERVIEW OF PLAINTIFF'S ARGUMENTS IN OPPOSITION**..................... 6

    **III.**    **DEFENDANTS OWED PLAINTIFF SPECIAL DUTIES OF CARE ARISING FROM SEVERAL SOURCES**................................................................................ 11

        **A.**  **Defendants Owed Plaintiff Special Duties Based on Special Circumstances** 12

            *i.*   *The Existence of Special Duties are a Factual Determination* ..................... 12

            *ii.*  *Plaintiff Has Sufficiently Alleged Special Circumstances Giving Rise to a Special Duty*........................................................................................................ 13

        **B.**  **Defendants Owed Plaintiff Special Duties Based on Statutory Reporting Obligations**.................................................................................................... 17

        **C.**  **Defendants Owed Plaintiff Special Duties Based on a Voluntary Undertaking by Defendants** .............................................................................................. 19

    **IV.**   **DEFENDANTS OWED A GENERAL DUTY TO ACT REASONABLY IN LIGHT OF FORESEEABLE RISKS OF HARM** ............................................. 22

    **V.**     **DEFENDANTS OWED A DUTY TO WARN OF KNOWN DANGER** ............ 27

    **VI.**   **PLAINTIFF HAS SUFFICIENTLY PLEADED A CLAIM FOR PUNITIVE DAMAGES** .................................................................................................... 39

**CONCLUSION** ..................................................................................................................... 32

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGES**

*ALMQUIST V. SYNERGO, LLC,*
NO. 3:15-CV-01281-SB, 201b6 WL 10654015 (D. OR. DEC. 27, 2016) ............................... 20

*ANDOR V. UNITED AIR LINES, INC.,*
303 OR 505 (1987) ........................................................................................................ 31

*BALDWIN V. MILLER,*
44 OR. APP. 371, 606 P.2D 629 (1980) ........................................................................... 20

*BARNES V. YAHOO!, INC.,*
570 F.3D 1096 (9TH CIR. 2009) ...................................................................................... 20

*BELLIKKA V. GREEN,*
306 OR. 630 (1988) .................................................................................................. 17, 18

*BMW OF N. AM., INC. V. GORE,*
517 U.S. 559, 116 S. CT. 1589, 134 L. ED. 2D 809 (1996) ...................................................... 32

*BROWN V. USA TAEKWONDO,*
11 CAL. 5TH 204 (2021) ........................................................................................... 14, 15

*C.J.C. V. CORP. OF CATH. BISHOP OF YAKIMA,*
138 WASH 2D 699 (1999) ................................................................................................ 16

*CHAPMAN V. MAYFIELD,*
358 OR. 196, 361 P.3D 566 (2015) ................................................................................. 23

*DOE 1 V. CITY OF MURRIETA,*
102 CAL.APP.4TH 899 (2002) ......................................................................................... 15

*DOE I V. CORP. OF PRESIDENT OF CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS,*
NO. 2 CA-CV 2023-0293, 2025 WL 2158205 (ARIZ. CT. APP. JULY 29, 2025) ................. 1, 7

*DOE V. BOY SCOUTS OF AM.,*
66 NE3D 433 (ILL APP CT 2016) .................................................................................... 14

*DOE V. ROMAN CATHOLIC ARCHBISHOP OF LOS ANGELES,*
70 CAL.APP.5TH 657 (2021) .......................................................................................... 14

*DOE V. UNITED STATES YOUTH SOCCER ASSN., INC.,*
8 CAL.APP.5TH 1118 (2017) ........................................................................................... 15

*DOE V. UNITED STATES,*
381 F. SUPP. 3D 573 (M.D.N.C. 2019) ............................................................................. 20

*E.J.T. BY AND THROUGH INTRUSTMENT, NORTHWEST, INC. V. JEFFERSON COUNTY,*
370 OR. 215 (2022) .............................................................................................. 17, 18, 19

*EST. OF SCHWARZ V. PHILIP MORRIS INC.,*
206 OR. APP. 20, 135 P.3D 409 (2006) ............................................................................ 32

*FAZZOLARI BY & THROUGH FAZZOLARI V. PORTLAND SCH. DIST. NO. 1J,*
303 OR. 1, 734 P.2D 1326 (1987) ............................................................................. PASSIM

*FUHRER V. GEARHART-BY-THE-SEA, INC.,*
306 OR. 434, 760 P.2D 874 (1988) ........................................................................... PASSIM

*GREGG V. HAWAII, DEP'T OF PUB. SAFETY,*
870 F.3D 883 (9TH CIR. 2017) .......................................................................................... 5

*HARRIS V. CNTY. OF ORANGE,*
682 F.3D 1126 (9TH CIR. 2012) ......................................................................................... 5

*JANE DOE 130 V. ARCHDIOCESE OF PORTLAND IN OREGON*
717 F. SUPP. 2D 1120, 1139 (D. OR. 2010) ........................................................... 15, 30, 31

*JUAREZ V. BOY SCOUTS OF AM., INC.*,
    81 CAL. APP. 4TH 377 (2000)...........................................................................14
*LACEY V. MARICOPA CNTY.*,
    693 F.3D 896 (9TH CIR. 2012)............................................................................5
*LEWIS V. BELLOWS FALLS CONGREGATION OF JEHOVAH'S WITNESSES*,
    248 F. SUPP. 3D 530 (D. VT. 2017).............................................................20, 21
*LYMAN V. DRIVING FORCE LOGISTICS, LLC*,
    NO. 3:24-CV-00826-SB, 2026 WL 381877 (D. OR. FEB. 11, 2026)................11, 27
*MARQUAY V. ENO*,
    139 NH 708 (1995)...........................................................................................15
*MCQUISTON V. CITY OF LOS ANGELES*,
    564 F. APP'X 303 (9TH CIR. 2014).....................................................................5
*MUNOZ V. PHH CORP.*,
    659 F. SUPP. 2D 1094 (E.D. CAL. 2009) ...........................................................5
*N. MGMT. SERVS., INC. V. NAVIGATORS SPECIALTY INS. CO.*,
    608 F. SUPP. 3D 996 (D. IDAHO 2022)..............................................................5
*N.L. V. BETHEL SCH. DIST.*,
    186 WASH 2D 422 (2016) ................................................................................15
*PIAZZA V. KELLIM*,
    360 OR. 58, 377 P.3D 492 (2016) ....................................................................10
*SABIA V. STATE*,
    164 VT. 293, 669 A.2D 1187 (1995) .................................................................21
*SCHEFFEL V. OREGON BETA CHAPTER OF PHI KAPPA PSI FRATERNITY*,
    273 OR. APP. 390, 359 P.3D 436 (2015)...........................................................20
*SHAHTOUT V. EMCO GARBAGE CO.*,
    298 OR. 598, 695 P.2D 897 (1985) ..................................................................18
*SHIN V. SUNRIVER PREPARATORY SCH., INC.*,
    199 OR. APP. 352, 111 P.3D 762 (2005).....................................................12, 15
*STONE V. WITT*,
    374 OR. 524, 581 P.3D 919 (2025) ...........................................................PASSIM
*TOWE V. SACAGAWEA, INC.*,
    357 OR. 74, 347 P.3D 766 (2015) ....................................................................23
*WOLF DESIGNS LLC V. FIVE 18 DESIGNS LLC*,
    635 F. SUPP. 3D 787 (D. ARIZ. 2022)................................................................5

**STATUTES**
O.R.S. 31.730(1) ..................................................................................................30
O.R.S. 419B.010 et seq............................................................................... PASSIM
O.R.S. 419B.015 .....................................................................................................8

**RULES**
FED. R. CIV. P. 15(a)(2) ..........................................................................................5
FED. R. CIV. P. 12(C).........................................................................................2, 5

**OTHER AUTHORITIES**

1 MOTIONS IN FEDERAL COURT § 5:154 (3d ed.) ............................................................... 4
RESTATEMENT (*SECOND*) OF TORTS §323 (1965)......................................................... 10, 19
RESTATEMENT (*THIRD*) OF TORTS §42 (2012) .................................................................. 19
RUTTER GROUP PRAC. GUIDE FED. CIV. PRO. BEFORE TRIAL CH. 9-E...................... 2, 5

PAGE v – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT
ON THE PLEADINGS**

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 10,913 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

## INTRODUCTION

Defendants' motion contends that "the Church had no legal duty—under either Washington or Oregon law—to protect Plaintiff from her father's crimes." Defendants' Motion for Judgment on the Pleadings (hereinafter "MJP") at 2.  According to Defendant, "[t]o hold that Plaintiff has pleaded a viable legal claim against the Church, this Court would have to be the first to ever recognize a legal duty of care in circumstances like these. No church has been held liable for failing to stop intrafamily abuse." *Id.* at 2. In other words, though presented as a motion for judgment on the pleadings, Defendants' motion contends, as a matter of law, there is never a duty for religious organization to intervene in the face of a known danger of sexual abuse posed to a minor member of the Church by a family member. To the contrary, as discussed below, at least one other court (the Arizona Court of Appeals) has recently held that questions of fact exist about the LDS Church's duty report intra-family sexual abuse.[1] *Doe I v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, No. 2 CA-CV 2023-0293, 2025 WL 2158205 (Ariz. Ct. App. July 29, 2025), discussed below. Furthermore, Oregon's most recent articulation of the law of negligence in *Stone v. Witt* supports Plaintiff's contention here that there are questions of fact about the existence of a duty on Defendants' part that require denial of Defendants' motion. As discussed below, the facts of this case require that a jury decide whether special circumstances,

---

[1] *Doe I v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, No. 2 CA-CV 2023-0293, 2025 WL 2158205 (Ariz. Ct. App. July 29, 2025), discussed below.

PAGE 1 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

statutory obligations, Defendants' voluntary undertaking, or generally applicable obligations (including an obligation to warn) triggered a duty on Defendants' part that was breached in this case.

**STATEMENT OF FACTS**[2]

This is a child sexual abuse case. Plaintiff, referred to in this action as Julie Doe (a pseudonym), was adopted into a family at age 13 by Craig Ford and Jennifer Ford, who were members of Defendants' religious organization, The Church of Jesus Christ of Latter-day Saints (also known as the Mormon Church or the LDS Church). Proposed First Amended Complaint (hereinafter "PFAC"), ¶¶ 16-17; Complaint (hereinafter "Compl."), ¶¶ 15-16.[3] Shortly after her adoption, Plaintiff herself was baptized in the Defendants' Church and became an active member. PFAC, ¶ 17.

Beginning in December 2015, Craig Ford, then age 31, began sexually abusing Julie Doe, then age 15. PFAC, ¶ 18; Compl., ¶ 17. Very soon after the sexual abuse began, Julie's adoptive mother, Jennifer Ford, developed concerns that Mr. Ford was sexually abusing Julie. PFAC, ¶ 19; Compl., ¶ 19. In March 2016, Mrs. Ford came into possession of sexually suggestive letters Mr.

---

[2] As discussed in the Statement of Law section, *infra*, Ninth Circuit precedent provides that, in the context of a motion for judgment on the pleadings: (1) a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts; and (2) a court can, for efficiency, apply a pending motion for judgment on the pleadings as against a later-submitted amended complaint. Furthermore, in responding to the Fed. R. Civ. P. 12(C) motion, "[i]t is also a good practice [for the party opposing the motion] to submit a proposed amended pleading that addresses whatever defects have been raised by the moving party." Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 9-E ("Motion for Judgment on the Pleadings"). Accordingly, where, as here, a plaintiff has filed a motion to amend in conjunction with a response to a motion for judgment on the pleadings, it is appropriate for the court to consider the allegations of the proposed First Amended Complaint in deciding Defendants' motion. For these reasons, the Statement of Facts includes reference to allegations in Plaintiff's Proposed First Amended Complaint.

[3] Many of these facts were asserted initially in Plaintiff's original complaint. Plaintiff has learned some additional facts through discovery process which have been added in the Proposed First Amended Complaint. For clarity, Plaintiff will first cite to the Proposed First Amended Complaint, then to the corresponding citation to the original Complaint (where applicable).

PAGE 2 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Ford had written to Julie. PFAC, ¶ 19; Compl., ¶ 18. These letters incited a verbal altercation between Mrs. Ford and Mr. Ford during which all the letters were destroyed except one. *Id.* In the only surviving letter, Mr. Ford referred to Julie as "sexy," described how much he enjoyed holding Julie in his arms, referring to "all the things [he] want[ed] to do to [Julie]," and telling her that he loved Julie and "want[ed] to be with [her] forever." PFAC, ¶ 21; Compl., ¶ 20.

In the beginning of April 2016, Julie and the rest of the Ford children went to stay with Mr. Ford's parents in Montana for spring break. PFAC, ¶ 20; Compl., ¶ 19. During this time, Jennifer Ford shared information regarding the suspected sexual abuse of Julie with Wade Pickett, who was a high-ranking leader (Stake President) and fellow member within the LDS Church. PFAC, ¶ 21; Compl., ¶ 20. Stake President Pickett did not report the abuse to police or take any other steps to address it. PFAC, ¶ 23; Compl., ¶ 22. Instead, he discouraged Jennifer Ford from reporting the abuse to civil authorities, alleging that she lacked sufficient proof. *Id.*

Later that month, Mr. Ford and Julie Doe moved to Albany, Oregon, where they lived alone for almost two years. PFAC, ¶¶ 24, 33; Compl., ¶ 24. During that period Mr. Ford continued to sexually abuse Julie, including at times more than once per day. PFAC, ¶¶ 24-25; Compl., ¶ 23. After moving to Oregon, Julie remained engaged with Defendants' Church. PFAC, ¶ 31; Compl., ¶ 24. During this time in Oregon, agents from the LDS Church in Oregon were in relationship with Julie and were at various times in positions of supervision over Julie while she was in the Church's care, including at youth program events or while driving her places. PFAC, ¶ 31. They also spoke with her one-on-one about her personal life and home life and visited her home, including while Craig Ford was present. *Id.*

In December 2016, while Julie was living alone with Craig Ford and being sexually abused by him in Oregon, Jennifer Ford reported the sexual abuse of Julie Doe by Craig Ford to

PAGE 3 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

a different LDS Church bishop, confirming that the abuse was still ongoing. PFAC, ¶ 27. This information was communicated to the LDS Church's Confidential Records Department, and an annotation was added to Craig Ford's membership record. PFAC, ¶¶ 27-28. A few months later in February 2017, the LDS Church Bishop for Craig Ford and Julie Doe's ward in Albany, Oregon, was notified of the allegation of sexual abuse by Craig Ford and was given the information that he was still living alone with Julie Doe within his ward's territory in Oregon. PFAC, ¶ 30. Leaders from the Church in the Albany ward also developed concerns about the nature of Mr. Ford's relationship with Ms. Doe based on their own observations and interactions. PFAC, ¶ 32; Compl., ¶ 24. Yet still, no action was taken by the Church or its agents in Oregon, even though in Oregon, church officials had a statutory duty to report suspected child abuse. PFAC, ¶¶ 30, 42. Additionally, the Church in their own policies generally undertook certain responsibilities to report abuse, support and counsel victims, and hold abusers accountable. PFAC, ¶ 14.

As a result, Mr. Ford's sexual abuse of Julie continued for months. In 2018, Mr. Ford was arrested following allegations of abuse of another minor—Julie's adopted sister (referred to in this case as Sheila Doe) and was subsequently convicted of charges of incest and abuse for crimes against Sheila Doe in Washington State. PFAC, ¶ 35; Compl., ¶ 28. Eventually, in 2020, Mr. Ford was also convicted of crimes of incest and rape against Julie Doe in Washington State, and in Oregon in 2021. *Id.*

**ARGUMENT**

### I.    LEGAL STANDARD

"A motion for judgment on the pleadings is not favored and will be granted only when no material issue of fact remains to be resolved and one party is entitled to judgment as a matter of law." 1 Motions in Federal Court § 5:154 (3d ed.). "Because a Rule 12(c) motion is functionally

identical to a Rule 12(b)(6) motion, the same standard of review applies to motions brought under either rule." *Gregg v. Hawaii, Dep't of Pub. Safety,* 870 F.3d 883, 887 (9th Cir. 2017) (citation and internal quotation marks omitted). "The facts are viewed in the light most favorable to the non-moving party and all reasonable inferences are drawn in favor of that party." *Munoz v. PHH Corp.*, 659 F. Supp. 2d 1094, 1096 (E.D. Cal. 2009).

"As with traditional motions to dismiss, if a court grants a motion for judgment on the pleadings, leave to amend should be granted unless 'the Court is satisfied that an amendment could not cure the deficiency.'" *N. Mgmt. Servs., Inc. v. Navigators Specialty Ins. Co.,* 608 F. Supp. 3d 996, 1000 (D. Idaho 2022) (quoting *Harris v. Cnty. of Orange,* 682 F.3d 1126, 1135 (9th Cir. 2012)). In fact, in the context of a pending motion for judgment on the pleadings, "the Ninth Circuit has long held 'a district court should grant leave to amend even if no request to amend the pleading was made.'" *Wolf Designs LLC v. Five 18 Designs LLC*, 635 F. Supp. 3d 787, 793 (D. Ariz. 2022) (quoting *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 926 (9th Cir. 2012) (en banc)) (quotation marks and citation omitted). This is consistent with the generally liberal approach to allowing amendments—i.e., that "[t]he Court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).

On a Fed. R. Civ. P. 12(C) motion, "[a] dismissal without affording plaintiff an opportunity to amend to conform the allegations of the complaint to post-filing developments and evidence obtained during discovery may constitute an abuse of discretion." Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 9-E ("Motion for Judgment on the Pleadings") (citations omitted). Furthermore, where an amended complaint is filed while a motion for judgment on the pleadings is pending, the Court may consider the amended complaint while resolving the issues presented by the already-pending motion for judgment on the pleadings.

PAGE 5 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

*McQuiston v. City of Los Angeles*, 564 F. App'x 303, 305 (9th Cir. 2014) (affirming trial court's decision to "treat the City Defendants' motion [for judgment on the pleadings directed at the **second** amended complaint] as applying to the ***third*** amended complaint and considering that motion, along with his response, in resolving this case").

Here, Plaintiff has moved to amend her complaint. Her PFAC supplements the factual record—including with recently discovered evidence disclosed by Defendants, much of it in the last six weeks (as discussed in her Motion to Amend). Plaintiff's amendments also clarify and expand her negligence theories in several separate counts in light of that new evidence as well as the recent decision by the Oregon Supreme Court in *Stone v. Witt,* 374 Or. 524, 581 P.3d 919 (2025)—released in December.

Assuming that, for the sake of the efficiency, the court wishes to proceed with a determination on the substantive issue presented by Defendant's motion (i.e. "no duty as matter of law"), consideration of Plaintiff's PFAC along with this response is appropriate. In conjunction or in the alternative, as a part of her response to this motion, to the extent the court finds any deficiency in Plaintiff's original Complaint, the Court should grant Plaintiff leave to amend.

## II.   OVERVIEW OF PLAINTIFF'S ARGUMENTS IN OPPOSITION

Defendants' Rule 12(c) Motion for Judgment on the Pleadings has a simple premise: Defendants contend that "the Church had no legal duty . . . to protect Plaintiff from her father's crimes."[4] MJP at 1. According to Defendants, "[t]o hold that Plaintiff has pleaded a viable legal claim against the Church, this Court would have to be the first to ever recognize a legal duty of

---

[4] Defendants raise arguments under Washington and Oregon law. Plaintiff only addresses Oregon law in this response because Plaintiff has only asserted claims under Oregon law and has formally requested that application of Oregon law to this action. *See* PFAC at ¶ 38; Compl. at ¶¶ 31, 38.

PAGE 6 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

care in circumstances like these. No church has been held liable for failing to stop intrafamily abuse." MJP at 2. Defendants admonish that "Plaintiff is inviting the Court to 'venture . . . into a sea heretofore uncharted.'" *Id.* at 2. However, Defendants were parties to such a case decided by the Arizona Court of Appeals last year. *See Doe I v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, No. 2 CA-CV 2023-0293, 2025 WL 2158205 (Ariz. Ct. App. July 29, 2025). Similar to the facts in this case, plaintiffs in *Doe I* were children who were members of the LDS church. *Id.* at 1. Their father, also an LDS Church member, sexually abused plaintiffs within their home and subsequently confessed the abuse to his bishop. *Id.* The bishop failed to report this "intrafamily abuse" to the civil authorities according to the mandatory reporting statute, and the sexual abuse continued for several more years until the abuser was eventually arrested. *Id.* The plaintiff-victims sued the LDS Church for negligence, as well as other claims related to the additional abuse they suffered after the LDS Church leaders failed to report the known abuse. *Id.* Despite the complex clergy-penitent confidentiality at issue in that case, the court in *Doe I* concluded that "genuine issues of material fact exist as to the Church Defendants' duty to report." *Id.* at 7. This case demonstrates that Plaintiff's assertion here that Defendants owed Plaintiff a duty under these circumstances is not as novel or outlandish as Defendants claim in their Motion.

In this response, Plaintiff will explain that there are five distinct, yet at times overlapping sources of legal duties which Defendants owed to Plaintiff and which Plaintiff has sufficiently asserted in Plaintiff's PFAC[5]: (1) a duty arising from special circumstances that create an obligation from Defendants to Plaintiff; (2) a duty arising from statutory obligations to report

---

[5] Plaintiff had already pleaded facts supporting most of these counts of negligence in her original Complaint. See, e.g., Complaint at ¶ 33 ("***special relationship***"; "***special duty of care***") ("***duty of ordinary***") ("Plaintiff was a member of a class of individuals to be protected by ***proper warnings***"). Defendants have never previously challenged the sufficiency of these allegations and Plaintiff has not previously amended.

PAGE 7 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

abuse under O.R.S. 419B.015 et seq.; (3) a duty arising from Defendants' voluntary undertaking to act reasonably in protecting, supporting, or rendering services to members who are abuse victims, including Plaintiff; (4) a general duty to act reasonably in light of foreseeable risks of harm; and (5) a duty to warn Plaintiff of a known danger. Defendants' arguments fail to address the breadth of the landscape of Oregon's negligence law which provides many distinct factual circumstances from which a legal duty may arise. Acknowledging that the Oregon Supreme Court has recently charted a map of this landscape in *Stone v. Witt*, Plaintiff turns the court there for guidance. 374 Or. 524, 581 P.3d 919 (2025).

Beginning with the "Fundamentals Principles of Negligence," the court in *Stone v. Witt* points the readers back to the landmark *Fazzolari* case which cautioned that:

> [F]raming the question of liability in terms of whether the defendant owes a 'duty' to the plaintiff can be unhelpful when liability is premised on the ordinary obligation—or 'duty'—that, in general, every person owes to every other person, in contrast to liability that depends on the existence of special circumstances or relationships.

*Stone,* 374 Or. at 532 (quoting *Fazzolari By & Through Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1, 3-18, 734 P.2d 1326 (1987).) The court in *Stone* explains that the shorthand "duty-breach-causation formulation" often used by attorneys and judges alike can confuse the issues by "obscur[ing] the question whether a complaint invokes a special duty to the plaintiff arising from a particular status, relationship, or external standard, or relies only on the general common law governing liability for negligence toward strangers." *Id.* at 533 (quoting *Fazzolari,* 303 Or. at 15). In an effort to un-obscure the question for the Court, Plaintiff lays out the five sources of the duties which she alleges Defendants' actions or inaction breached and subject them to liability for negligence under Oregon law.

First, Plaintiff alleges that Defendants owe a special duty to Plaintiff "beyond the generalized standards that the common law of negligence imposes on persons at large." *Stone* at

PAGE 8 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

536 (quoting *Fazzolari,* 303 Or. at 10). The court in *Stone* says that "liability may . . . arise in special cases ***out of circumstances that create an obligation*** on the part "of the negligent actor to the injured party beyond the common law duty to exercise reasonable care to prevent foreseeable harm." *Id.* at 535. The court in *Stone* explained that these special duties "can flow from ***sources of law like statutes*** or court orders, or they can arise *because of an **undertaking** or a **relationship between the plaintiff and defendant*** for which the common law recognizes a special obligation." *Id.* at 536 (emphasis added). Here, Plaintiff alleges that the special duty Defendants owe to Plaintiff arises from a special set of factual circumstances, a statutory obligation, and a voluntary undertaking.[6]

Plaintiff has asserted a long list of special circumstances giving rise to a special duty in this particular case. One of these circumstances is that a special relationship existed between Defendants and Plaintiff because Defendants invited Plaintiff as a minor to "entrust herself into [their] care or custody" and "Plaintiff did in fact enter into a special relationship with Defendants as a minor church member and/or active minor participant in church services and programming." PFAC, ¶ 40. But in addition to that relationship, Plaintiff also asserts that the following are also special circumstances that, taken together, give rise to a special duty: (1) Defendants' assurances of care and protection for victims of abuse, (2) Defendants' repeated notice of abuse that Plaintiff suffered, (3) Defendants' relationship with Plaintiff's abuser who was also a member, (4) Defendants' statutory duty to report child sexual abuse to civil authorities under O.R.S. 419B.010 et seq., and (5) Defendants' specialized knowledge of the problem and nature of child sexual abuse and its impacts on victims. PFAC, ¶ 41. Taken as true, these special circumstances support the finding that Defendants owed Plaintiff a special duty of care.

---

[6] From the outset, Plaintiff has alleged that a special relationship existed which gave rise to a duty of care by Defendant. *See, e.g.* Complaint at ¶¶ 1, 33-34.

**PAGE 9 – PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Second, in light of newly discovered evidence that Defendants' agents in Oregon were directly notified about the sexual abuse of Plaintiff and were aware of circumstances indicating it was continuing, Plaintiff alleges that the statutory obligation to report child sexual abuse to civil authorities under O.R.S. 419B.010 et seq. *alone* is sufficient to create a legal duty that Defendants owed to Plaintiff, according to *Stone*.[7]

Plaintiff then asserts that a special duty arises here because Defendants voluntarily undertook a duty to render services to victims of sexual abuse within their membership, including Plaintiff as a minor member and known victim of sexual abuse.[8] Defendants have publicly pronounced their voluntary undertaking to protect, support, and otherwise help victims of abuse within their membership. This voluntary undertaking creates a duty to perform the undertaken services (including toward Plaintiff) with reasonable care, according to Restatement (Second) of Torts §323 (1965).

Next, Plaintiff asserts that Defendants owed her a duty based on the "ordinary obligation . . . that, in general, every person owes to every other person." *Stone* at 532. With regard to this ordinary negligence claim, the requirements of "duty" and "breach" are linked in a single determination of "whether the defendant's conduct unreasonably created a foreseeable risk of harm to a protected interest of the plaintiff." *Stone* at 533 (quoting *Piazza v. Kellim*, 360 Or. 58, 70). As discussed below, Plaintiff alleges affirmative actions taken and choices made by Defendants which created a foreseeable risks of harm to Plaintiff, including but not limited to additional sexual, verbal, mental, and emotional abuse that Plaintiff suffered.

Plaintiff also asserts a fifth duty owed by Defendants—namely, a duty to warn of a known danger to Plaintiff. While the court in *Stone* did not address this type of negligence claim

---

[7] "[S]pecial obligations can flow from sources of law like statutes . . ." *Stone* at 536.
[8] "[S]pecial obligations . . . can arise because of an undertaking . . ." *Stone* at 536.

PAGE 10 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

(presumably because the facts there did not implicate any failure to warn), the Oregon Supreme Court has recognized this failure-to-warn negligence claim since at least 1988 in *Fuhrer v. Gearhart-By-The-Sea, Inc.,* 306 Or. 434, 760 P.2d 874 (1988).[9] According to *Fuhrer*, "a defendant may be found to have a duty to warn another of an undue risk of harm to a protected interest of the other if the defendant knows of the risk." *Id.* at 438. Here, Plaintiff asserts that Defendants knew the types of long-term emotional and psychological injuries that Plaintiff was likely to suffer as a result of sexual abuse by her adoptive father and failed to warn her of those dangers. PFAC, ¶ 56. Plaintiff has sufficiently pleaded these five sources of legal duties that Defendants owed her, as detailed below.

### III.  DEFENDANTS OWED PLAINTIFF SPECIAL DUTIES OF CARE ARISING FROM SEVERAL SOURCES

The Oregon Supreme Court's recent guidance in *Stone* makes clear that special circumstances can create duties that go beyond the reach of ordinary negligence:

> For those categories of harm that ordinary negligence liability does not reach, however, liability may still arise in ***special cases out of circumstances that create an obligation*** on the part of the negligent actor to the injured party beyond the common law duty to exercise reasonable care to prevent foreseeable harm. . . ***Those special obligations can flow from sources of law like statutes*** or court orders***, or they can arise because of an undertaking or a relationship between the plaintiff and defendant*** for which the common law recognizes a special obligation.

*Stone*, 374 Or. at 535-36 (cleaned up) (emphasis added).

Here, Defendants owed special obligations to Plaintiff based on a number of sources, including special circumstances, statutory duties, and a voluntary undertaking.

///

///

___

[9] Oregon courts continue to recognize the continuing viability of this claim in more recent cases including in the District Court of Oregon in 2026: *Lyman v. Driving Force Logistics, LLC*, No. 3:24-CV-00826-SB, 2026 WL 381877 (D. Or. Feb. 11, 2026).

PAGE 11 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

### A.    Defendants Owed Plaintiff Special Duties Based on Special Circumstances

Plaintiff turns first to the special duty of care arising from special circumstances between Defendants and Plaintiff. Defendants contend that they had no special relationship with Plaintiff which would support the finding of a special duty. MJP at 8. That is a fact in dispute that precludes judgment on the pleadings.[10] Moreover, Plaintiff is arguing more than just a traditional "special relationship" with Defendants as the basis for a special duty here. According to *Stone*, a court and jury can consider the complete set of unique factual circumstances in a given case in determining whether such circumstances are "special" enough to give rise to a special duty. In other words, a special obligation to an individual may be born out of a special set of circumstances and is not limited to those traditional relationships usually associated with special duties (i.e. doctor-patient, lawyer-client, etc.). *Stone v. Witt*, 374 Or. 524, 581 P.3d 919 (2025).

Plaintiff asserts here a number of special circumstances, including a special relationship, a statutory duty to report, and more, that when considered together, are sufficient to preclude judgment on the pleadings in Defendants' favor on the issue of duty.

### i.    *The Existence of Special Duties Are a Factual Determination*

Oregon case law makes clear that courts should be careful to label the question of "duty" in a negligence action as "purely legal." The court in *Fuhrer* emphasizes that courts have often improperly considered the question of "duty" as a purely legal issue and "prevented juries from considering . . . whether a reasonable person in the defendant's position would warn of the risk, by deciding either that the defendant had a duty or had no duty to warn." *Fuhrer v. Gearhart-By-The-Sea, Inc.*, 306 Or. 434, 439 760 P.2d 874 (1988). The court in *Fuhrer* finds that, although

---

[10] "Whether a relationship is special is driven by the facts." *Shin v. Sunriver Preparatory Sch., Inc.*, 199 Or. App. 352, 366, 111 P.3d 762, 770 (2005).

PAGE 12 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

"[i]t has been argued that [duty] is a determination that courts should make," "this approach has led to a system of classification based on similarities to previous cases *rather than an analysis based on the particular facts of each case*" when, instead, "*the reasonableness of the action should be determined by the factfinder.*" *Id.* (emphasis added). The court expressly spells out that the "duty" question cannot so easily be bifurcated from the "reasonableness" question so as to make it a purely legal determination for a court. Instead, it is a factual matter appropriately left to a jury: "If no specific obligation is imposed by law or contract, *the factfinder should determine whether action by the parties is required by the relationship and, if so, what action is required.*" *Id.* (emphasis added). Especially in cases like this one, where Defendants' obligation to Plaintiff could be found to arise from a unique set of circumstances, the determination of whether Defendants owed Plaintiff a heightened duty of care is a factual one.

Keeping this guidance in mind, Plaintiff presents the factual circumstances which she alleges in her Complaint and pending PFAC.

### ii.    *Plaintiff Has Sufficiently Alleged Special Circumstances Giving Rise to a Special Duty*

Plaintiff's PFAC alleges a number of special circumstances that existed between Plaintiff and the Church, which taken collectively are sufficient to give rise to a special duty of care. These circumstances include:

a)    Defendants' invitation (and Plaintiffs' acceptance) to become and remain a minor member of Defendants' Church;

b)    Defendants' knowledge of Plaintiff's vulnerabilities;

c)    Defendants being repeatedly entrusted with care and custody of Plaintiff;

d)    Defendants' ongoing contact with and relationship of trust with Plaintiff;

e)    Defendants' repeated undertakings to provide (and Plaintiff's reliance upon Defendants for) counsel and guidance, including in intimate and one-on-one settings and on sensitive, personal topics;

PAGE 13 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

f)      Defendants' repeated provisions of (and Plaintiff's reliance upon Defendants for) material care and support to Plaintiff, including transportation;

g)      Defendants' specialized knowledge about the problem of child sexual abuse and the long-term harm that it causes;

h)      Defendants' public assurances that it intervenes to protect victims of abuse;

i)      Defendants' receiving repeated notice and information indicating that Plaintiff had been sexually abused by Craig Ford;

j)      Defendants' ongoing knowledge that Plaintiff was living in circumstances indicating that such abuse was ongoing; and

k)      Defendants' Oregon Agent's statutory duty under O.R.S. 419B.010 et seq., to report suspected child abuse.

PFAC, ¶ 42. Additionally, Plaintiff's PFAC alleges that:

Defendants invited Plaintiff . . . to enter a special relationship with the LDS Church, in part inviting minor Plaintiff to entrust herself into the care or custody of the Church. Plaintiff did in fact enter into a special relationship with Defendants as a minor church member and/or active minor participant in church services and programming.

PFAC, ¶ 41. While Defendants' ongoing relationship with Plaintiff as a youth member of their organization is only one part of this factual determination, the special relationship between the parties is an important factor.

Courts in other jurisdictions have held that churches have special relationships with minor church members.[11] Likewise, courts in other jurisdictions have similarly held that other types of youth-serving organizations are in special relationships with their youth participants, such as Boy Scouts of America or schools or other clubs.[12] Although Defendants assert that

_____

[11] *See Doe v. Roman Catholic Archbishop of Los Angeles*, 70 Cal.App.5th 657 (2021) (church to minor student).
[12] *See Juarez v. Boy Scouts of Am., Inc.*, 81 Cal. App. 4th 377, 411 (2000), disapproved of on other grounds by *Brown v. USA Taekwondo*, 11 Cal. 5th 204 (2021) ("[W]e, too, would conclude that a special relationship existed between the Scouts and Juarez giving rise to a duty to protect him from harm caused by the criminal conduct of third parties.") (emphasis added); see also *Doe v. Boy Scouts of Am.*, 66 NE3d 433, 440, 459 (Ill App Ct 2016) (holding that a reasonable juror could find a special relationship existed between the former Boy Scout plaintiff and the Boy

PAGE 14 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

church membership cannot ever create a special relationship,[13] the Oregon District Court in *Jane Doe 130 v. Archdiocese of Portland in Oregon* seems to leave that possibility open. The Court in *Doe* finds that the plaintiff failed to plead sufficient facts to support a finding of a special relationship. *Jane Doe 130*, 717 F. Supp. 2d 1120, 1139 (D. Or. 2010). However, in the Court's reasoning, it makes a point to mention that plaintiff "does not allege that she was a parishioner of any church of the Archdiocese" or that she "gave the archdiocesan defendants responsibility for or control over [plaintiff's] welfare." *Id*. In contrast, here, where Plaintiff has pleaded that she not only attended church, but she was a baptized member who was active in the Young Women's group and at times was under the care and supervision of the Church, a court *could* find that a special relationship existed.

Where a special relationship exists, a heightened duty of care to protect against known dangers can extend beyond the activities where children are within the care and custody of the organization, to protect against offsite harms, including sexual abuse by custodial parent. In Oregon, the foundational case on this point is *Fazzolari*, 303 Or 1 (1987). The court in *Fazzolari* expressly rejected the school's argument that its responsibility to students was "limited to the school day." *Id.* at 20. As such, the law does not preclude the Court from finding that a special duty of care extended to protect against foreseeable sexual abuse off campus and outside of school hours. Similarly, in *Shin v. Sunriver Preparatory Sch., Inc.*, a custodial father raped his daughter while visiting her during her enrollment at the defendant's boarding school. 199 Or.

---

Scouts of America); *see also Doe v. United States Youth Soccer Assn., Inc.*, 8 Cal.App.5th 1118, 1130-1131 (2017) (sports club in special relationship with minor participant); *Doe 1 v. City of Murrieta*, 102 Cal.App.4th 899, 918 (2002) (police department to minor on ride-along); *Brown v. USA Taekwondo*, 11 Cal 5th 204, 222 (2021) (affirming conclusion that USA Taekwondo was in special relationship with plaintiffs); *Marquay v. Eno*, 139 NH 708, 717 (1995) ("We agree with the majority of courts from other jurisdictions that schools share a special relationship with students entrusted to their care[.]"); *N.L. v. Bethel Sch. Dist.*, 186 Wash 2d 422, 430, 432, 434-36 (2016) ("school districts have 'an enhanced and solemn duty' of reasonable care to protect their students").
[13] *See* MJP at 9.

PAGE 15 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

App. 352, 356-59, 111 P.3d 762 (2005). The abuse occurred when plaintiff was off the school's campus and after school hours. *Id.* at 359. Yet, the Court in *Shin* still affirmed a jury's finding of negligence for plaintiff's injuries which resulted from the off-campus criminal behavior of her father. *Id.* at 352.

Like *Fazzolari* and *Shin*, courts in other jurisdictions have similarly held that youth-serving organization's obligation of care towards its youth participants extends beyond the confines of official activities. *See C.J.C. v. Corp. of Cath. Bishop of Yakima*, 138 Wash 2d 699 (1999), as amended (Sept. 8, 1999). For example, in the context of a sexual abuse case against the Catholic Church, the Washington Supreme Court held:

> ***[W]e simply do not agree with the Church that its duty to take protective action was arbitrarily relieved at the church door.*** Where a protective special relationship exists, a principal is not free to ignore the risk posed by its agents, [when it] place[s] such agents into association with vulnerable persons it would otherwise be required to protect . . . ***simply because the harm was accomplished off premises or after-hours.***

*Id*. at 724.

Even beyond just a traditional "special relationship," all of the special circumstances asserted here together form a basis from which a jury could find a special duty of care under *Stone*.

The additional special circumstances asserted here are significant. Defendants had specific knowledge about Plaintiff's vulnerabilities, had received multiple reports of Craig Ford's sexual abuse of Plaintiff, and knew that Plaintiff was that she was living with her abuser. *See* PFAC, ¶¶ 16, 21, 24, 27, 29, 30, 42. In addition, Defendants' published handbook and other materials confirmed to their members and the wider public that they undertook to protect and help victims of abuse, to prioritize reporting abuse to civil authorities, and to discipline abusers. *See* PFAC, ¶¶ 14, 42. And, for the Defendants' agents who lived and served as clergy in Oregon,

**PAGE 16 – PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

they had a statutory duty to report suspected child abuse under O.R.S. 419B.010 et seq. *See* PFAC, ¶¶ 30, 42.

All of these facts, considered in totality, were indeed special circumstances that a jury could find gave rise to a special duty of care from Defendants to Plaintiff here. *See Fuhrer*, 306 Or. at 439, (***"the factfinder should determine whether action by the parties is required by the relationship and, if so, what action is required"***) (emphasis added). On this basis, Defendants' motion should be denied.

### B.    Defendants Owed Plaintiff Special Duties Based on Statutory Reporting Obligations

Although all the circumstances explained above can be considered together to determine whether Defendants owed Plaintiff a special duty of care, the court in *Stone* indicates that a special duty can arise from a statute, such as O.R.S. 419B.010 et seq., *alone*. The *Stone* court wrote that:

> [T]here are multiple ways in which a party "may be able to use a statute to meet or support one of the elements of his or her claim or defense in an ordinary negligence action," including "to establish the proper standard of care, . . . to show that the defendant met or failed to meet this standard," to "indicate standards of care that the defendant should have met," or "to show that a defendant should have considered the risk to a particular group of people which includes the plaintiff."

*Id*. at 546-47 (quoting *Bellikka v. Green*, 306 Or. 630, 649-50 (1988)).

In Oregon, O.R.S. 419B.010 et seq. requires private officials to report to authorities when they have "reasonable cause to believe" that a child is being abused. While O.R.S. 419B.010 et seq. does not itself create a private right to action,[14] the existence of this statute can support a negligence claim. As the *E.J.T.* court wrote, "[n]othing in this opinion should be read as foreclosing the possibility of a common-law claim under the circumstances that plaintiff has

---

[14] *See E.J.T. by and through InTRUSTment, Northwest, Inc. v. Jefferson County*, 370 Or. 215, 235 (2022).

PAGE 17 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

alleged." *E.J.T.*, 370 Or. at 239 (2022). Indeed, in Footnote 12 of its opinion, the court in *E.J.T.* cited cases affirming the availability of common law negligence claims under similar circumstances. *See id.* at 235, n. 12. The Oregon Supreme Court in *E.J.T.* also cited with favor *Bellikka*, 306 Or. at 650, for the proposition that "claims based on statutory liability 'exist independent of any parallel common-law claim and can be pleaded independently, with or without an accompanying common-law claim.'" *Id*. at 239. *See also Shahtout v. Emco Garbage Co.*, 298 Or. 598, 601, 695 P.2d 897 (1985) ("Of course, a plaintiff may assert both statutory and common-law theories of liability on the same facts."). Importantly, the court made this clarification in light of the plaintiff in *E.J.T.* confirming that "the complaint was alleging a claim for statutory liability," while also asking the court to "advise the parties about all of the ways that the statutory duties might be uses to establish the elements of an existing common-law claim." *Id.* The court in *E.J.T.* further clarified that the denial of that request was because it was "beyond the scope of the certified question" at issue. With that context, it is clear that the court in *E.J.T.* was not precluding O.R.S. 419B.010 et seq. from being used as a basis for a common-law claim and left the door open for such a scenario.

Here, Defendant failed to comply with the terms of O.R.S. 419B.010 et seq. when, despite having reasonable grounds to believe that Plaintiff was being abused by her adoptive father while living in Oregon and attending LDS Church services and programming in Oregon, LDS clergy in Oregon made no report to civil authorities. While Defendants emphasize that the information that Plaintiff was being abused was initially shared with clergy in Washington, Plaintiff has recently learned through new discovery that information about the sexual abuse of Julie Doe by Craig Ford of was subsequently shared with clergy in Oregon, namely the bishop of Plaintiff's ward in Albany, Daniel White. PFAC, ¶ 30. Plaintiff and her adoptive father's church

PAGE 18 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

memberships had been transferred to their local ward in Albany, Oregon. PFAC, ¶ 30. And Plaintiff was active in the Albany ward's Young Women's group. PFAC, ¶ 31. Accordingly, Defendants had a duty to report the suspected abuse to authorities, as required by law and as directed by Church policy. PFAC, ¶ 31. The failure by Defendants' Oregon agents to report this abuse provides an independent viable basis for Plaintiff's negligence claim.

Defendants' assertion that the holding in *E.J.T.*, should be read to prevent O.R.S. 419B.010 et seq. from creating a statutory duty is incorrect. Instead, the case actually lays the groundwork for statute to be the basis of a special duty in a common law negligence claim, as is alleged in Plaintiff's PFAC.

### C. Defendants Owed Plaintiff Special Duties Based on a Voluntary Undertaking by Defendants

Plaintiff in her PFAC also alleges that the Church Defendants assumed a duty to Plaintiff by undertaking to render services to victims of abuse, including her. PFAC, ¶¶ 69–70. These allegations, taken as true, support the imposition of a special duty of care upon Defendants under *Stone. Id.* at 536 (special duties "can arise ***because of an undertaking*** . . . between the plaintiff and defendant for which the common law recognizes a special obligation" (emphasis added)). This theory is also well supported by the Restatement (Second) of Torts § 323, Negligent Performance of an Undertaking to Render Services.[15] It states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

---

[15] While Restatement (***Third***) of Torts §42, Duty Based on Undertaking, is substantially similar to this section of Restatement (Second) of Torts, Oregon courts have not yet expressly adopted the Restatement (Third) standard.

PAGE 19 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

This section of the Restatement has been adopted by both Oregon appellate courts and the Oregon District Court. *See Barnes v. Yahoo!, Inc.,* 570 F.3d 1096 (9th Cir. 2009), *as amended* (Sept. 28, 2009) ("Oregon has adopted section 323 of the Restatement (Second) of Torts (1965), which describes the elements of this claim."); *Almquist v. Synergo, LLC,* No. 3:15-CV-01281-SB, 2016 WL 10654015 (D. Or. Dec. 27, 2016), *report and recommendation adopted*, No. 3:15-CV-1281-SB, 2017 WL 6211075 (D. Or. Feb. 13, 2017); *Scheffel v. Oregon Beta Chapter of Phi Kappa Psi Fraternity*, 273 Or. App. 390, 359 P.3d 436 (2015); *Baldwin v. Miller*, 44 Or. App. 371, 606 P.2d 629 (1980).

Furthermore, a voluntary undertaking has been held to create a special duty of care in sexual abuse contexts in several Federal District Courts across the county. *See, e.g., Lewis v. Bellows Falls Congregation of Jehovah's Witnesses,* 248 F. Supp. 3d 530 (D. Vt. 2017) (finding that child sexual abuse victims' claims against a religious entity based on defendant's negligence in performing a gratuitous undertaking were sufficient to allege a duty); *Doe v. United States,* 381 F. Supp. 3d 573, 602 (M.D.N.C. 2019) (finding a special duty applied to child victims of sexual abuse when a government agency "voluntarily assumed a duty to protect from, report, investigate, and treat sexual abuse").

In *Lewis v. Bellows Falls Congregation of Jehovah's Witnesses*, the United States District Court of Vermont analyzed how this Negligent Performance of an Undertaking claim specifically applies in a case where the plaintiff is a victim of sexual abuse charging a religious organization with negligence based on a duty to perform an undertaking. 248 F. Supp. 3d 530 (D. Vt. 2017). In *Lewis*, plaintiff claims that the religious entity defendants "undertook a duty to monitor [the abuser's] association with minors after learning of a prior allegation that [he] had molested a young child." *Id.* at 539. The plaintiff in *Lewis* based the contention of the existence of an

PAGE 20 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

undertaking on an internal church "policy requiring congregation elders to 'vigilantly monitor' accused molesters." *Id.* The court in *Lewis* determined that ***the religious entity's policy alone was sufficient*** for a factfinder to "reasonably conclude [defendants] . . . ***had undertaken*** such a duty" because "courts generally require very little action on the part of defendants to find an undertaking." *Id.* (quoting *Sabia v. State*, 164 Vt. 293, 669 A.2d 1187, 1194 (1995)) (emphasis added).

Here, Plaintiff has alleged in her PFAC that it is the clear and well-established policy of the LDS Church to take reports of abuse of their members seriously, to offer counseling, support and care to abuse victims, and to hold abusers accountable through the membership council disciplinary process. PFAC ¶ 14. The LDS Church policies provide that when a member has been abused in some way, "the first and immediate responsibility of Church leaders is to help, in a kind and sensitive way, those who have been abused and to protect vulnerable persons from future abuse." *Id.* In fact, "[i]**f any member of the LDS church knows or suspects someone is being abused, they should report the abuse to civil authorities**." *Id.* The LDS church policy even creates an exception to their general confidentiality rule for situations, like child sexual abuse, which instructs church leaders to "**contact civil authorities immediately when it is necessary to prevent serious injury** even if doing so might violate their duty of confidentiality" because "[a] **church leader's duty to protect others is more important than the duty of confidentiality**." *Id.* Additionally, "Church leaders **should not encourage a person to remain in a home or situation that is abusive or unsafe**" and "should consider foremost the safety and protection of the victim." *Id.* Church leaders should provide members who are victims of abuse "spiritual counseling and support to **help victims overcome the destructive effects of abuse,**" and they "must hold a membership council to discipline a member who is accused of committing

PAGE 21 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

child abuse or incest, regardless of a member's level of spiritual maturity and gospel understanding." *Id.* Furthermore, Defendants took the step of informing Plaintiff's bishop in Oregon about the abuse, which should have triggered the aforementioned responses by the Oregon ward's leadership.

These policies reflect an undertaking by Defendants towards their members who are victims of abuse to provide these services to them, which are necessary to protect them from further abuse. Plaintiff was such a minor member of Defendants' church. Thus, Plaintiff has alleged facts sufficient to support a finding that Defendants have assumed a duty to reasonably render such services to their victim-members, including Plaintiff.

## IV.    DEFENDANTS OWED A GENERAL DUTY TO ACT REASONABLY IN LIGHT OF FORESEEABLE RISKS OF HARM

Plaintiff has also sufficiently pleaded that Defendants owed Plaintiff a duty of care under a theory of ordinary negligence. The Oregon Supreme Court in *Stone* lays out this standard for ordinary negligence clearly: "Ordinarily, a claim for liability based on negligence merely requires the plaintiff to plead and prove facts to permit a finding that the defendant's 'conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff.'" *Stone,* 374 Or. at 530 (quoting *Fazzolari* 303 Or. at 17, 734 P.2d 1326 (1987)). The court walks through the Oregon case law since the important holding in *Fazzolari*, explaining that the "measure of liability for ordinary negligence—formerly described in terms of 'duty' and 'breach'—is now framed as whether the defendant's conduct unreasonably created a foreseeable risk of harm to a protected interest of the plaintiff." *Stone* at 533 (internal quotations removed). Thus, "when asserting an ordinary negligence claim, **a plaintiff does not need to prove that the defendant owed the plaintiff a duty**, because—as a general proposition—**everyone owes each**

PAGE 22 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

**other the duty to act reasonably in light of foreseeable risks of harm**." *Towe v. Sacagawea, Inc.*, 357 Or. 74, 86, 347 P.3d 766, 775 (2015) (emphasis added).

*Stone* also recognizes that even the harm to plaintiffs resulting from criminal conduct of third parties can be foreseeable. Indeed, "a person can create a risk of harm without being the sole or original source of the risk and that multiple actors can combine to cause harm." *Stone*, 374 Or. at 552, 581 P.3d 919, 937 (2025). This means that a person or entity can be liable to a plaintiff for ordinary negligence for foreseeable criminal conduct of a third party if they created any additional risk of harm to the plaintiff.

The court in *Stone* makes clear that for ordinary negligence claims,

> [m]ost of that standard for liability comprises *factual questions to be decided by the factfinder*, including questions about foreseeability—namely, whether the defendant's conduct was unreasonable in light of foreseeable risks of harm and whether the plaintiff's injury was among the types of foreseeable harms that made the defendant's conduct unreasonable.

*Id.* at 533-534 (emphasis added). The court's only task is to "determine whether upon the facts alleged . . . no reasonable factfinder could decide one or more elements of liability for one or the other party." *Id.* at 534 (quoting *Chapman v. Mayfield*, 358 Or. 196, 205, 361 P.3d 566 (2015)).

Defendants incorrectly state that Plaintiff has alleged mere nonfeasance or failure to rescue and thus has failed to state an ordinary negligence claim. This analysis oversimplifies Plaintiff's claims. Here, Plaintiff has asserted from the outset facts supporting a finding that Defendants created an additional risk of harm for Plaintiff when their agent, Wade Pickett, discouraged Jennifer Ford from reporting or intervening in her husband's sexual abuse of Plaintiff in April 2016 when Mrs. Ford first reported the abuse to him. Compl. at ¶¶ 22, 26; PFAC at ¶¶ 23, 34. Pickett also downplayed the seriousness of Mr. Ford's conduct to Mrs. Ford when he told her that there was not enough proof and therefore nothing should be done about the abuse of Plaintiff. PFAC, ¶¶ 23, 34.

PAGE 23 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

These acts created an additional risk for Plaintiff because it allowed Mr. Ford to further isolate Plaintiff by taking her to live with him alone in Oregon, unimpeded, where the sexual abuse escalated in frequency and invasiveness. Compl., ¶ 25; PFAC, ¶ 33. At the time of the initial report of the abuse by Jennifer Ford to Stake President Pickett in early April 2016, Craig Ford had not yet taken Plaintiff to live alone with him in Oregon. Compl., ¶¶19-21; PFAC, ¶¶ 21-23. Had Pickett not discouraged Jennifer Ford from reporting or intervening in the abuse and instead treated the report seriously by offering support and services to Plaintiff and encouraging her not to remain in a home with her abuser (according to the Church's own policy), Plaintiff would likely never have moved to Oregon with Craig Ford and not been subjected to additional and increased sexual abuse.

Furthermore, it is not only LDS Church agent Pickett's action which Plaintiff alleges created the additional risk of harm which she then suffered. In approximately December 2016, the Church Defendants received notice of the sexual abuse again when Ms. Ford reported to her then bishop, Nathan Hess, that Mr. Ford was still sexually abusing Plaintiff. PFAC, ¶ 27.[16] At that point, Defendants alerted the Confidential Records department of the abuse and placed an annotation on Mr. Ford's file. PFAC, ¶¶ 27-28. But Defendants adopted a view of the sexual abuse as a "consensual" relationship (as reflected in their official documentation) and made no effort to follow up with anyone to address their uncertainty about whether law enforcement or other civil authorities were aware of the abuse. *Id.* at ¶ 27. These actions by the Church were negligent because they did not follow their own required processes. Defendants chose not to proceed with a membership council to restrict or discipline Craig Ford, a requirement for

---

[16] This information was not in the original complaint because Plaintiff learned about it through additional discovery produced by Defendants on December 23, 2025, and January 30, 2026. *See* Declaration of Peter Janci in Support of Plaintiff's Motion to Amend Complaint, ¶¶ 6–7.

PAGE 24 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

situations of child abuse or incest. *Id.* at ¶¶ 14, 27, 30, 36, 52. Defendants also chose not to help Plaintiff by offering her counsel, support, and services, in violation of their policies regarding victims of abuse. *Id.* at ¶¶ 14, 27, 30, 52.

Then in February 2017, a church member who had been in contact with Plaintiff alerted Bishop Hess that Plaintiff and Mr. Ford were now living together in Albany, Oregon, and that Plaintiff was interesting in getting involved in the church where she now lived. PFAC, ¶ 29. With this additional information, Bishop Hess alerted Bishop White (bishop of the Albany ward) that Mr. Ford and Plaintiff were transferred to his ward and filled him in on the history of allegations regarding Craig Ford's sexual abuse of Plaintiff. *Id.* at ¶ 30. Yet still, the Church Defendants chose to continue to ignore and downplay the abuse, once again choosing to violate their own policies about responding to abuse. *Id.*

Defendants also chose not to report the abuse to civil authorities, as was their legal duty under O.R.S. 419B.010 et seq., and was their internal LDS Church policy as well. PFAC, ¶¶ 14, 30. Defendants chose not to proceed with a disciplinary council for Mr. Ford or take any additional action to protect Plaintiff from Craig Ford despite knowing that they lived alone together. *Id.* at ¶¶ 30, 36, 52. Defendants chose not to counsel Plaintiff, support her, encourage her not to continue to live with Craig Ford, or offer her any services as a victim of abuse as their own handbook instructs them to do. *Id.* at ¶ 14, 30, 52.

Defendants' continual downplaying of Craig Ford's abuse as "consensual" and not something worthy of reporting or following any of their own policies as to victims and perpetrators of abuse created additional risks of harm to Plaintiff. Defendants' actions communicated to Plaintiff's mother (Jennifer Ford) that Craig Ford's sexual abuse of Julie was Plaintiff's fault and lead her to verbally and emotionally abuse Plaintiff for months, calling her a

PAGE 25 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

"whore" and a "homewrecker," overtly blaming her for Craig Ford's sexual abuse and the separation of their family, and encouraging Plaintiff to complete suicide. PFAC, ¶¶ 34, 53; Compl., ¶ 26. A reasonable jury could also conclude that Defendants' actions indicated to Craig Ford that the Church was not going to do anything to hold him accountable for the abuse which allowed him to abuse Plaintiff even more regularly and brazenly than he would have otherwise. And Defendants' actions reinforced to Plaintiff her mistaken belief that she was not a victim of abuse; otherwise, Defendants would have taken the affirmative steps expressly laid out in their policies to protect and support victims, as well as to discipline perpetrators. As a result, Plaintiff falsely believed that she was in a "consensual" sexual relationship that was her own doing and misunderstood her abuser's actions as affection and love, causing her to continue living with him, continue enduring sustained abuse, and keeping her from disclosing the abuse to authorities. *Id.* at ¶ 53.

This ordinary negligence claim is not a failure to rescue claim as Defendants categorize it.[17] Rather, Plaintiff claims, as is required by *Fazzolari* that defendant's "conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." *Fazzolari,* 303 Or. at 17, 734 P.2d at 1336 (1987). Defendants discouraged reporting by Plaintiff's adoptive mother, downplayed the seriousness of Mr. Ford's conduct, adopted a view of the abuse as consensual, and indicated to Plaintiff she was not a victim—all through their affirmative actions which created several additional foreseeable risks of harm to Plaintiff. Therefore, Plaintiff has sufficiently pled an ordinary negligence claim against Defendants to survive a 12(c) motion.

---

[17] Plaintiff asserts a separate Negligent Performance of an Undertaking to Render Services claim in the context of assumption of duty above. *Supra* section III.C.

PAGE 26 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

## V.  DEFENDANTS OWED A DUTY TO WARN OF KNOWN DANGER[18]

Plaintiff additionally sufficiently asserts that Defendants had a duty to warn Plaintiff of a known danger.[19] Defendants incorrectly assert that the "Church has no special knowledge or reason to warn Plaintiff of any danger." MJP at 15. Plaintiff's PFAC alleges that the Church failed to warn Plaintiff that Mr. Ford's sexual acts toward her were abusive and that it would have long term negative consequences on her psychologically. PFAC, ¶¶ 58-60. Plaintiff was a child who misunderstood her adoptive father's sexual conduct toward her to be signs of affection and love, rather than abuse; Church Defendants knew better (according to their own materials and experience with other victims of sexual abuse) and failed to warn Plaintiff of the danger posed by this ongoing abuse. *Id.* at ¶¶ 13, 15, 33, 58-65.

The Oregon Supreme Court lays out the requirements for this negligence cause of action due to a failure to warn of a known danger in *Fuhrer v. Gearhart-By-The-Sea, Inc.*, 306 Or. 434, 760 P.2d 874 (1988).[20] In *Fuhrer*, the "[p]ersonal representative of deceased hotel guest brought action against hotel . . . for failure to warn of hazards of ocean surf in which guest dies trying to rescue children." *Id.* at 434. In analyzing the plaintiff's claim, the court in *Fuhrer* explained that "[f]ailure to warn or protect should be analyzed in terms of foreseeability and unreasonable conduct," and "a defendant may be found to have a duty to warn another of an undue risk of harm to a protected interest of the other ***if the defendant knows of the risk***." *Id.* at 438 (emphasis added). The court distinguishes this failure to warn analysis from an ordinary negligence claim,

---

[18] Because no special relationship (or any relationship at all) is required for this cause of action, it is unclear after *Stone v. Witt* whether this type of claim falls under ordinary negligence or a special obligation.

[19] Plaintiff has alleged a failure to warn theory from the outset. Complaint at ¶ 33. Plaintiff's First Amended Complaint further clarifies this theory. PFAC at ¶¶ 57-64.

[20] As recently as February 2026, Oregon Courts have recognized the continuing viability of this claim. *See Lyman v. Driving Force Logistics, LLC*, No. 3:24-CV-00826-SB, 2026 WL 381877 (D. Or. Feb. 11, 2026) (court finds a genuine issue of material fact as to the failure-to-warn claim).

PAGE 27 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

stating that "[i]n a warning case, the risk of harm created is exposure to a danger known to the defendant." *Id.* In other words, "[t]he risk in a failure-to-warn case is not the hazard itself, but the chance that someone predictably will be exposed to danger . . . if no warning is made." *Id.* Therefore:

> A defendant may be liable if the defendant can reasonably foresee that there is an unreasonable risk of harm, a reasonable person in the defendant's position would warn of the risk, the defendant has a reasonable chance to warn of the risk, the defendant does not warn of the risk, and the plaintiff is injured as a result of the failure to warn.

*Id.* at 438-39. Plaintiff's allegations in her PFAC satisfy all of these elements.

The court in *Fuhrer* also specifically disclaimed reliance on any special relationship in these types of failure to warn cases in which the harm producing force was outside of defendant's control, stating that even "**[i]n the absence of a duty arising from a [statute, status, or relationship],** *a defendant may be liable for conduct which is unreasonable in the circumstances if that conduct results in harm to a plaintiff*." *Fuhrer* at 438-39 (emphasis added). The court emphasizes that while the nature of the parties' relationship may help inform whether defendant's conduct was reasonable or not, this is a **fact issue to be determined by a jury**. *Id.* at 439. The Oregon Supreme Court in *Fuhrer* goes so far as to make clear that: "***Even if there is no relationship between the parties,* if the risk is great, either in likelihood or magnitude, and the cost is minimal, the reasonableness of the action should be determined by the factfinder.**" *Id.* at 439 (emphasis added).

Here, Defendants could reasonably foresee that there was an unreasonable risk of harm of sexual abuse to Plaintiff when they received multiple reports of Mr. Ford's sexual abuse of her

over an extended period of time and learned that Plaintiff was living alone with him in Oregon.[21] PFAC, ¶¶ 58-59. A jury could find that in this situation a reasonable person would have warned Plaintiff of the long-term psychological risk of continued sexual abuse. PFAC, ¶ 62. Plaintiff was an active member of Defendants' church, giving them multiple chances to warn her. PFAC, ¶ 63. Defendants did not warn her, even though the costs of doing so were *de minimis*. PFAC, ¶¶ 64-65. Plaintiff continued to be subjected to abuse because of their failure to warn and has suffered psychological injury as a result. PFAC, ¶ 66.

Plaintiff has sufficiently pleaded facts to support a failure-to-warn negligence claim that survives Defendants' 12(c) motion.

## VI. PLAINTIFF HAS SUFFICIENTLY PLEADED A CLAIM FOR PUNITIVE DAMAGES

Defendants contends that even if the Court finds Defendants had a duty to Plaintiff, the Court should grant judgment on the pleadings as against Plaintiff's punitive damages claim. According to Defendants, Plaintiff's "Complaint fails to provide any specific examples or cases of the Church failing to protect children from intrafamily abuse." MJP at 17. Of course, Defendants' argument ignores Plaintiff's allegations in this case that (in addition to knowledge of numerous prior incidents of abuse) the Church was on notice of the abuse ***this Plaintiff*** was suffering. Those allegations include that:

- Defendants' agents learned of information "regarding Craig Ford's abuse of Julie Doe [which] was imputed to Defendants." Compl. at ¶ 21.

- "Despite this information, Pickett did not take action to report the abuse to civil authorities, investigate, intervene, or otherwise prevent or protect against any further child sexual abuse of Julie Doe by Craig Ford….did not advise Jennifer Ford to report the

---

[21] Based on their knowledge and experience from dealing with many claims of sexual abuse, Defendants knew or should have known that an abuser, if given an opportunity to abuse again, will do so. *See, e.g.,* Complaint at ¶ 13 ("Defendants knew: (a) the recidivistic nature of child sexual abusers").

PAGE 29 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

abuse…[and] expressly or implicitly attributed responsibility (in whole or part) to Plaintiff for the sexual abuse." Compl. at ¶ 11.

- "Upon arriving in Albany, Oregon. . . . Defendants learned through their agents that . . . that Craig Ford was continuing his sexual abuse of Julie Doe." Compl. at ¶ 24.

- "By failing to respond in any way to repeated indications of sexual abuse of the minor Plaintiff, the LDS Church knowingly allowed and permitted the victim to be subjected to near-daily invasive sexual abuse . . . ." Compl. at ¶ 1

- "In light of Defendants' knowledge of the danger posed by Craig Ford and Jennifer Ford, Defendants' actions and omissions were undertaken with reckless and outrageous indifference to a highly unreasonable risk of harm and with a conscious indifference to the health, safety, and welfare of Plaintiff." Compl. at ¶ 40.

In the face of these allegations, Defendants contention that "Plaintiff's sparse and inapposite allegations fail *Iqbal's* 'plausibility standard'" are without merit. MJP at 17. That conclusion is further bolstered by Plaintiff's PFAC, which further alleges actual notice to the Bishop in Oregon and further disregard by the Church even after that additional notice, including failure to meet statutory reporting obligations in Oregon. PFAC, ¶ 30.

Next, Defendants contend that the Court should dismiss Plaintiff's punitive damages claims because "Plaintiff has alleged only an ordinary negligence claim against the Church." (MJP at 18). In support, Defendants cite to a sexual abuse case against the Archdiocese of Portland for the proposition that: "Under Oregon law, 'simple negligence, without more, cannot support an award of punitive damages.'" MJP at 18 (citing *Jane Doe 130 v. Archdiocese of Portland*). However, Defendants insert a period at the end of the quote they include where the original quote places a comma, omitting the key second clause that undercuts the very argument for which they cite the case:

> Although it is clear under Oregon law that simple negligence, without more, cannot support an award of punitive damages, *see* O.R.S. 31.730(1), **where the evidentiary record supports findings of *both* negligence *and* the additional factors of aggravated misconduct requisite for award of punitive damages, a punitive damages award may lie in connection with a negligence claim**[.]

PAGE 30 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

*Jane Doe 130,* 717 F. Supp. 2d at 1140 (italics in original) (citations omitted). In fact, in *Jane Doe 130,* the District Court went on to explain that "whether a defendant's conduct is aggravated or wanton or comes within any of the other characterizations that permit the imposition of punitive damages is for the jury to decide, as long as there is evidence upon which the finding can be based." *Id.* at 1141. Based on these principles, the District Court in *Jane Doe 130* properly held that, despite the clear and convincing evidence standard that would apply at trial, the Plaintiff had carried her burden for purposes of defeating a pleading motion under the same standard applicable to the instant motion:

> **[Plaintiff]** *has expressly alleged that, in failing to investigate, monitor, supervise, restrict, or remove Fr. J.V.H. despite their knowledge of facts suggesting that he presented a risk to children, the archdiocesan defendants "acted with malice or a reckless and outrageous indifference to a highly unreasonable risk of harm and with a conscious indifference to the health, safety, and welfare of [Jane]."*
>
> *Jane has met her burden . . . [and] the motion to dismiss should be denied as to Jane's punitive damages request.*

*Id.* at 1141 (emphasis added).

Punitive damages are appropriate for negligence claims where a defendant's conduct involves the intentional disregard of known dangers to others. Only "*some* conscious disregard of or highly irresponsible indifference to [the potential danger] is required" to impose punitive damages for negligent acts. *Andor v. United Air Lines, Inc.*, 303 Or 505, 517 (1987) (emphasis added). Defendants do not contest that their agents learned of the abuse and took no action (i.e. disregarded the danger to Plaintiff)—they simply contend they cannot be held liable in negligence because they were under no duty to take any action. Assuming the court finds that Plaintiff has pleaded a viable basis for a duty, the facts alleged preclude judgment on the pleadings against Plaintiff's punitive damages claim.

PAGE 31 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendants' protestations about the irrelevance of Plaintiff's allegations about the other prior incidents of abuse known to Defendants are similarly misplaced. "[E]vidence describing out-of-state [conduct] . . . . may be relevant to the determination of the degree of reprehensibility of the defendant's conduct." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574, 116 S. Ct. 1589, 1598, 134 L. Ed. 2d 809 (1996); *see also Est. of Schwarz v. Philip Morris Inc.,* 206 Or. App. 20, 51, 135 P.3d 409, 429 (2006). Further, Defendants' criticisms that Plaintiff has not yet shown evidence of other "intrafamily abuse that occurred outside the context of sanctioned Church activities" rings hollow in light of the fact the Defendants have not yet provided the evidence of other incidences which the Court has ordered will be produced in this case in the future.

Here, Plaintiff has alleged facts from which a reasonable jury could find that Defendants (through their agents, including clergy in Oregon) consciously disregarded the known abuse Plaintiff was suffering by Craig Ford. Defendants' motion for judgment on the pleadings as to Plaintiff's punitive damages claim must be denied.

## CONCLUSION

For all of the foregoing reasons, Defendants' Motion for Judgment on the Pleadings should be denied in its entirety.

DATED this 13th day of March, 2026.

**CREW JANCI ATTORNEYS**

/s/ Peter Janci
Peter Janci, OSB No. 074249
9755 SW Barnes Rd., Ste. 430
Portland, OR 97225
Tel: 503-306-0224
peter@crewjanci.com

PAGE 32 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

/s/ Kendall M. H. Spinella
Kendall Spinella, OSB No. 214446
9755 SW Barnes Rd., Ste. 430
Portland, OR 97225
Tel: 503-306-0224
kendall@crewjanci.com

/s/ Matan Goodblatt
Matan Goodblatt, OSB No. 224060
9755 SW Barnes Rd., Ste. 430
Portland, OR 97225
Tel: 503-306-0224
matan@crewjanci.com

*Of Attorneys for Plaintiff*

PAGE 33 – **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**